Catron, Judge.
An issue was made tip to try the fact, whether an instrument purporting to be the last will of Joseph IIuíí^ of Cocke county, was or was not the last will of said Joseph. It was dated in 1817, and IIulF died in 1827. One of the subscribing witnesses had retained the will in his possession from the. time of its date until after Hull’s death. That the will was made according to Mr. Huff’s wishes in 1817, is not disputed. It was formally drawn, witnessed by two disinterested witnesses, and deposited. Not the remotest unfairness is attributed to any person in obtaining the will, but the object of the issue was, to set it aside, because it was alleged by the plaintiffs in the issue, that Joseph Huff had revoked it by parol declarations between 1817 and 1827. The will disposed of both real and personal property. The proof set out in the record, shews that Huff spoke of making another will, and said he had broke the one deposited with the witness; meaning thereby, that he, after the will was executed, disposed of one plantation and some personal property, devised by the will. Other expressions were used years after the will was executed, which plaintiffs contend were expressive of a mind to revoke. The proof was all parol.
The circuit judge charged the jury, that a will, such as that offered for probate, could not he revoked by parol? Sither as to the realty or personalty. And as there was no legal evidence of revocation, the jury should find for the plaintiffs.
Could this will be revoked by parol? If so, the circuit court erred in rejecting the evidence from the jury. To decide this question the court is called upon, perhaps, for the first time since its existence, to give a construction to the statute of descents of 1784, ch. 22. The 14th sec. declares, “that no written will shall be revoked or altered bjr a subsequent nuncupative will, except the same be, in the lifetime of the testator, reduced to writing and read over to him and approved; and unless the same be proved to have been so done by the oaths of two witnesses, at least, who shall be such as arc admissible upon trial at common law.”
*407 Former adjudications of North Carolina and Tennessee have declared this section as applicable alone to a bequest of goods and chattels by a former will. No. C. Law Rep. 91. Peck’s Rep. 306. So we will take it.— This will could have been revoked in part directly or by implication, Greer vs. M’Cracken, Peck’s Reports 301— First, then, as to the personalty — was parol poof admissi-sible to prove it revoked? The statute says not. To make the nuncupative revocation effectual, it must have been reduced to writing in the testator’s lifetime, and read over to him, and approved by him. The facts that the paper was read to the testator and approved by him, must be proven by two competent witnesses. It need not be subscribed by the testator or the witnesses; yet the writing alone can be received to contradict the written will. In a case so delicate as memory of what a testator casually said, where perversion and perjury are so much to be dreaded, the legislature wisely guarded against such mistakes by requiring a writing, and rejecting all inferior proof of revocation. So far, then, as personal property was devised by the testator, the charge of the circuit court was correct.
The act of 1784, prescribes no form of. solemnity for the execution of a testament of goods, different from what was required by common law, save as to nuncupa-tive wills, by the 15th and 16th sections. But the 11th section prescribes a precise form, and manifests a most sacred regard for the due and solemn execution of wills-to pass estates in lands, tenements, and hereditaments. — - Perhaps no clause in our statute book has been, and is more venerated or deemed more vitally important than this. Any construction, tending to weaken the force of the provisions for the due and solemn execution of last wills, as there prescribed, we deem inadmissable. That the act of 1784, of descents, was penned with distinguished ability and sin guiar foresight; that it is one of the greatest monuments of our forefathers’ wisdom, all who understand it, will admit. Is it not strange, then, that legislators so profound, should provide for the case of a written *408 testament, disposing of goods, and declare it should not be revoked, unless proof of the fact should be made by a writing in connexion with the oath of two witnesses, when barely writing, not even signing, was sufficient to the validity of the bequest, sought to be revoked; — yet that they left a will of lands and tenements, the peculiar object of their care, subject to be revoked by a mere parol declaration of the testator; and this capable of proof by a single witness. So the counsel for the plaintiffs in error contends, is the construction of the act, and sustains his argument by the decision in the cause of Clark vs. Eborn, 1 Car. Law Rep. 91. To this effect certainly was the decision referred to. Great as is our respect for the opinion of the supreme court of North Carolina, bound by every consideration we are, to sustain the statute of 1784, still we cannot bring our minds to believe, that so obvious and great an oversight was committed by the legislature, as to leave open to be defeated, by means the most probable, not to say, perjuries the most certain, that which was the object of so much solicitude .and care. The testator, aged and garrulous, the sick and fretful — the literally dying from ill temper, or imposition by the interested, makes a hasty expression, by an intemperate word, revokes his will, cuts off his wife and sets up collaterals; a momentary flush of feeling, not thought of the next hour, sets at nought the testator’s most solemn act. If revocations can be thus made and thus proven, the aged, the sick and peevish had better not make wills more likely to destroy their estates by litigation, than preserve them to their devisees. If the will can be thus revoked, how can it again be set up? The testator may change his mind shortly after the revocation is pronounced. The will being revoked remains void. Of course the new one must have the same formalities of the former, as it will be' null, not conforming to the statute in its execution. Walton vs. Walton, 7 Johnson’s Chancery Rep. 270. 1 Robts on Wills, 346, and cases there cited. A will is an assurance of title, vesting an inchoate right in the devisee as soon as executed, which is conclusive on the death of the *409 testator when it relates to the date of the will. Rhodes and wife vs. Holland’s heirs, Nashville, January 1830.— It is subject lobe annulled or altered by the testator; nulled by destruction of the will itself — by a sale of the property devised, leaving nothing for the will to operate upon, altered by a subsequent will lawfully executed; but how revoked? This is in fact, an alteration — so the legislature deemed it in reference to personals. The will being left in existence, certainly constitutes the best evidence of the mind of the testator at his death, and according lo wrell settled rules of evidence, excludes that of an inferior grade. If common law rules be applied, all difficulty vanishes: the evidence of revocation must be of dignity equal to the instrument revoked. Such was the opinion of Judges Peck and Haywood, in the cause of Greer vs. M’Cracken, and such is the opinion of this court. We think the evidence correctly rejected by the circuit court. In coming to this conclusion, an imposing consideration is, that no case has appeared before the courts of justice in forty years, seeking to sustain a will of lands, upon the ground that it had been revoked by parol. Thousands of cases must have occurred where expressions have been used by testators, manifesting an intention, at that time, to revoke, in part or in whole, but which was changed upon more mature and sober reflection. The acquiescence of the legal profession, and the community for so long a time, in the conclusion that pa-rol proof was inadmissible to revoke a will duly executed to pass lands, is most persuasive evidence that the construction of the act of 1784, here given, is the true one. Than this, hardly any authority can be relied on, in the construction of a statute, operating upon a vast number of estates and daily practised upon.
Peck, Judge.
The reason given by Judge Taylor in the case of Clark’s Executors vs. Eborn, et. al. to produce the revocation, does, with me, operate the other way.
“So in the present case, the paper written by the testator’s direction, being unsigned, unattested, and not in his *410 own hand-writing, cannot operate as a devise of the lands ¿escrjbed jn j£. but as it indicates a clear purpose of making a different disposition of some of them from that contained in his former will, it so far operates as a revocation of them.”
Now the very circumstance of not signing or of calling a witness or witnesses, is as conclusive to show that the testator’s mind had come to no determination on the subject he had been merely thinking of, as it is conclusive to prove a disposition to revoke.
Touching the execution of deeds, Baron Comyn lays down these rules or stages, in the operation. 1. The mind to do it, and thereupon he causes it to be written, which is one part of deliberation. 2. Signing and sealing, which is the second part of deliberation; and 3rd and last; delivering, which is the last part of deliberation. Hence, says he, there is great deliberation touching the execution of deeds.
Our act of Assembly contemplates the making of last wills, as the most' solemn act of a man’s life — hence, the act specifies the writing, the attestation, and publishing, as all necessary to consummate the making of a last will.
The last act mentioned being done, may be evidence of the former acts — but all the former fall far short of being evidence of the latter.
The testator not signing in the case put by Judge Taylor, is proof that no conclusion had been reached by the mind, and that the writing was but experiment.
A will, regularly made and attested, is supposed to be under the control of the maker during his life.
If he intended to revoke, how easy to destroy the whole. The preserving it in that form is better proof of the satisfaction of the mind with it, than mere memoranda, (kept no more safely than the will,) is proof against it.
And were revocations in part intended, it would be unsafe to let in oral proof — it is against the policy of our laws — the injuries, if any could arise, would fall far short by shutting out the testimony of that which would follow by letting it in.
*411 la short, tho old rule of requiring one instrument of us high grade, to defeat another instrument, will be found wise when applied to last wills and testaments.
Whyte, Judge, concurred.