WINTON *v.* METROPOLITAN LIFE INS. CO.

(*Nashville*, December Term, 1938.)

Opinion filed Feb. 18, 1939.

WALKER & HOOKER and WM. C. SUGG, all of Nashville, for plaintiff in error.

HIGGINS & MOORE, of Nashville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action to recover under the double indemnity clauses on two insurance policies on the life of McKinley Winton, the plaintiff, Ruby Winton, his widow, being the beneficiary. A motion was directed by the trial Judge (Neil) for the defendant Company and the Court of Appeals affirmed.

The sole question is whether or not the death of the insured was accidental under our authorities construing this requirement in this class of policies. The contention made in the Court of Appeals and repeated here on behalf of plaintiff below is that the evidence taken as a whole affords material evidence of an accidental death, and that, therefore, this issue should have been submitted to the jury.

The facts are not in material respects in controversy, the insistence being that upon these facts there arose an

inference which the jury might legitimately draw to support the claim of accidental death.

The insured was a negro man who, on the night of his death, was out on what might be termed a "wild party." He was a member of a group of negroes, two women and one other man, his wife not being among the number, who were making the rounds of places which, from the record, were more or less disreputable. He was drinking, and the proof indicates was in a turbulent and quarrelsome mood. The party visited a house which appears to have been run by a woman of ill repute, and he seems to have made himself so obnoxious that he was finally evicted from the room in which the others had gathered and forced out onto an adjoining balcony. This further angered and aroused him to violence, and he remained on this balcony making threats of his intention to kill the first of the party who appeared. So far as the proof shows, he was last seen by a negro who lived in adjoining quarters, who had not been a member of this party, but who testifies that as he came to his room, he passed near the deceased and he describes the deceased as crouching down, holding a large knife in his hand, and heard him make one of his threats above mentioned. The next seen of the deceased was when he was found in this vicinity, unconscious, with his skull fractured by a blow on the left side of the head toward the front. The knife was lying by his side. An ambulance was called and he was carried away and did not regain consciousness.

It is conceded that his death was from external and violent means, as required by the terms of the policy, and there is no contention that he had committed suicide. The theory of the trial Judge is not set forth in the record, as he does not in his order directing the verdict set

forth the specific grounds upon which he rested his motion. In affirming, the Court of Appeals takes the view that he was killed in a difficulty in which he was the aggressor, as indicated by his preceding conduct, to which we have referred, and under circumstances which would have charged a reasonably prudent person with anticipation that he might himself suffer death or great bodily harm.

The holdings of this Court in the comparatively recent cases of *McGuire* v. *Metropolitan Life Insurance Co.*, 164 Tenn., 32, 46 S. W. (2d), 53, and *Mutual Insurance Co.* v. *Distretti*, 159 Tenn., 138, 17 S. W. (2d), 11, are followed and applied. In the first case, this Court held that one who is shot to death in the act of committing burglary is not accidentally killed, because a reasonable man should foresee that death or injury might result; and in the *Distretti Case* the same rule was applied where the deceased exposed himself to gunshot fire from robbers escaping from his premises.

▇ Agreeing with the Court of Appeals and with what was probably the view of the trial Judge, we think the circumstances all support the conclusion that the deceased met his death in the execution of an unlawful and violent assault upon someone against whom he had, or conceived that he had, a grievance. And we are of opinion that the principle announced in the cases above mentioned is applicable on a showing of such facts. Certainly, one who arms himself with a deadly weapon and publicly proclaims his purpose to commit murder should be held reasonably to anticipate that his course of conduct would subject him to death or injury at the hands of those against whom he was directing his deadly purpose.

 The opinion of the Court of Appeals discusses exhaustively a death certificate, including the certificate of the attending physician, which had been introduced in evidence by the plaintiff, which stated the nature of the injuries apparently received by the deceased and the cause thereby indicated of his death, and cites many authorities dealing with the question of the weight to be given this certificate provided for by our Code. But counsel for petitioner in this Court disclaim any reliance upon this certificate, and, commenting on the detailed discussion of this matter by the Court of Appeals, refer to it as a "discussion of an immaterial matter." Counsel say that no such insistence as the Court of Appeals considers "was made in the trial court or in the Court of Appeals." For this and other reasons, we do not consider it necessary to go into that matter. The substance of the certificate was as hereinbefore stated, and it goes no further than to make a showing as to what was the apparent cause of the death and we think is consistent with the conclusion that the deceased met his death as the result of a successful repelling of an attack made by him.

██ ██ It seems that this case is well within the rule as expressed in 14 R. C. L., 1257, where it is said: "The test seems to be, did the insured appreciate that by doing the act, he was putting life and limb in hazard?" Or, as expressed in the *Distretti Case, supra,* his death was not an accident, if "he voluntarily and intentionally did a thing from which, as a reasonable man, he foresaw or should have foreseen that death or injury might result." All common experience goes to show that a man who goes forth on a bloodthirsty rampage, with threats to take the lives of others, "takes his life in his hands" and should reasonably anticipate his own death.

Petition is denied.