PROVIDENT LIFE & ACCIDENT INS. CO. *v.* MADDOX.

(*Knoxville,* September Term, 1945.)

Opinion filed June 29, 1946.

BERKE & FLEMING, of Chattanooga, for plaintiff.

CHAMBLISS & CHAMBLISS, of Chattanooga, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the widow of Raymon Maddox to recover on an accident insurance policy providing an indemnity of $1,000 in case of death within the terms of the contract. There was a judgment below in favor of the plaintiff for the amount of the policy and 25 per cent penalty, affirmed by a majority opinion of the court of appeals, and petition for *certiorari* has been filed.

Maddox was a negro man some younger than his wife. They lived in Chattanooga and she appears to have been jealous. On the night of his death Maddox was away from home until very late and when he came in was upbraided by his wife, and they had a quarrel which resulted in a fight between them.

The mother of the wife lived with them, got very much worked up during this fight, ran out of the house screaming and making quite a disturbance.

A police officer named Padgett lived in the vicinity, was aroused by the screaming, and came down toward the Maddox house to see about it. The officer did not put on his uniform, in fact only wore a pair of trousers and shoes. He put his pistol in his trousers' pocket and after reaching the home of Maddox the officer met Maddox leaving.

The plaintiff, the wife of the insured, came out of the house to get her mother. She testified that she witnessed the meeting of the officer and her husband. That they passed each other and Padgett told her husband to stop. That her husband then turned back and began approaching Padgett and said to Padgett, "Get out of my face." She said this was a common expression used by the deceased, meaning for people addressed to quit meddling with him. From her testimony we gather that her husband continued to approach Padgett when the latter drew his pistol and fired and her husband fell to the ground. This witness further said that the officer did not shoot at her husband, but that she could tell from the flash of the pistol that he fired to the side of the latter and she later found that the bullet had struck a brick and ricocheted into her husband's body, inflicting a fatal wound.

The plaintiff also testified that she was sure that her husband did not know Padgett was an officer and that Padgett did not say he was an officer until after the shooting when he was talking to her.

Padgett himself testified that he did not try to shoot the deceased, did not aim at him, and had no thought of killing him. He said that he did announce that he was an officer when he ordered the negro to stop and that the negro said in substance that made no difference and continued to approach using profane and threatening language. We gather from Padgett's testimony that he claims to have fired the pistol as a warning and with no idea of hitting the deceased.

The policy covers death by "accidental means" and excludes those injuries fatal or non-fatal resulting from "the intentional act of the insured or of any other person."

The argument for the Insurance Company is that this death was not caused by accidental means in the sense of the law. That is to say that the conduct of deceased at the time of the shooting was such as might have satisfied him as a reasonable man that he was likely to sustain death or great bodily harm and that therefore the case fell within the rule announced in *Mutual Life Ins. Co. of New York* v. *Distretti*, 159 Tenn. 138, 17 S. W. (2d) 11; *McGuire* v. *Metropolitan L. Ins. Co.*, 164 Tenn. 32, 46 S. W. (2d) 53, and *Winton* v. *Metropolitan L. Ins. Co.*, 174 Tenn. 252, 124 S. W. (2d) 712. The last named case is particularly pressed upon our consideration as controlling the one before us.

The trouble with this argument is that it is based in great part on the account that Padgett, defendant Company's witness, gives of the fatal shooting. If Padgett's version of the facts should be accepted, the case might very well be said to fall under *Winton* v. *Metropolitan L. Ins. Co., supra.* The jury, however, having found for the plaintiff, it is our duty to take that view of the evidence most favorable to the plaintiff and resolve any conflicts in her favor and in support of the verdict.

Under the facts as stated by the plaintiff, the wife of the deceased, this case seems to us to fall under the rule announced in *Union Casualty, etc., Co.* v. *Harroll*, 98 Tenn. 591, 40 S. W. 1080, 60 Am. St. Rep. 873. In that case, a suit on an accident policy, the deceased attacked a man whom he supposed to be unarmed. It was accordingly held that deceased had no reason to anticipate serious or fatal injury from the provoked encounter and that the shooting of the deceased was to be regarded as an accidental injury under the rule of *Insurance Co.* v. *Bennett*, 90 Tenn. 256, 16 S. W. 723, 25 Am. St. Rep. 685. So here, although deceased was advancing on Padgett,

deceased did not know according to plaintiff's proof, that Padgett was an officer, and from Padgett's meager attire had no reason to suppose that he was armed. Accordingly deceased had no reason to expect serious or fatal injury from any encounter his language to Padgett and his advance upon the latter might have brought about.

The defendant Company does not in this Court rely on that provision of the policy exempting it from liability in the event injury was brought about by the intentional act of a third person.

The only assignment accompanying the petition for *certiorari* is that the court of appeals erred in failing to sustain the motion for a directed verdict. Under this assignment, in addition to the contention heretofore considered, it is said that the court erred in affirming the judgment of the trial court in adding a penalty of 25 per cent to the amount of the policy. We think this much of the assignment of error is well taken.

According to the information given to the defendant Company by Padgett and upon which it relied, it was extremely doubtful, to say the least of it, whether any recovery could be had on this policy under the *Winton Case* and those therein cited. We think it cannot be said that the Company acted in bad faith in defense of this suit and such is the condition which justifies the statutory penalty. Under a general motion for a directed verdict by a defendant insurance company, this Court quite commonly considers the propriety of the penalty.

On the whole case we think we would not be justified in reversing the judgment of the lower courts for the face of the policy. There were but two witnesses, both interested. The plaintiff interested in recovery on the policy, the officer interested in justifying his shooting the negro. The jury were entitled to accept the plain-

tiff's version of the shooting rather than the officers' version, and as plaintiff stated the facts, we think the result is justified by the *Harroll Case.*

If the plaintiff will remit the penalty, the petition for *certiorari* will be denied. If the plaintiff declines to take such action, the petition for *certiorari* will be granted and the case set down for argument.

NEIL, GAILOR, and PREWITT, JJ., concur.

CHAMBLISS, J., not participating.