# ESLICK v. WODICKA et al. (two cases).—215 S. W. (2d) 12.

Middle Section.    June 26, 1948.

Petition for Certiorari denied by Supreme Court, October 16, 1948.

334

Lamb & McCown and A. E. Simms, all of Fayetteville, for plaintiffs in error.

Bennett Eslick and David Rhea, both of Palaski, and Lawson H. Myers, Holman, Holman & Matthews, and Day Sugg, all of Fayetteville, for defendant in error.

HICKERSON, J. Dave Hipsh died in Lincoln County Tennessee, on March 18, 1947, leaving a paper writing which purported to be his will. Morgan Eslick, who was named as one of the beneficiaries and the executor in the purported will, offered the instrument for probate in common form in the County Court of Lincoln County. Probate was refused upon the ground that the instrument had not been executed in conformity with the statutory

law of this state regulating the execution of wills. An appeal was taken to the circuit court and pleadings were filed in which a jury was demanded to try the cause.

Before the case was tried in the circuit court, Morgan Eslick filed a petition in the County Court of Lincoln County seeking to probate the paper writing in solemn form as the last will and testament of Dave Hipsh. Defendants to this petition filed a plea of former suit pending; and, by answer, denied that the instrument offered for propate was the will of Dave Hipsh. They pleaded as a defense that the instrument had not been executed as required by the statute.

The county judge sustained the plea of former suit pending and dismissed the petition. The proponent appealed to the circuit court from that judgment.

The circuit judge consolidated the two cases, and they were tried together in the circuit court. There was only one issue: Was the instrument in question executed in conformity with the laws of this state which regulate the execution of wills?

Motions by plaintiff and defendants for directed verdicts in their favor were overruled, and the case was submitted to the jury. The jury could not agree upon a verdict and was discharged. Plaintiff and defendants renewed their motions for directed verdict after the jury was discharged. Defendants' motion was overruled. Plaintiff's motion was sustained, and a verdict was directed in favor of the will. Upon this verdict, judgment was entered declaring the instrument in question to be the will of Dave Hipsh and entitled to probate.

Defendants' motion for new trial was overruled, and they have appealed in error to this court. It is the contention of plaintiff and defendants, and the trial judge held, that there was not conflict in the evidence concerning

the material questions of fact. We agree with that conclusion. The question was one of law to be determined by the court.

Only two questions are made by the assignments of error:

(1) Did the trial judge err in consolidating the causes and in refusing to sustain defendants' plea of former suit pending as to the suit wherein the proponent sought to probate the instrument in solemn form?

■ Such action did not constitute reversible error because it did not affect the results of the trial. Plaintiff and defendants had their case fully and fairly presented in the circuit court upon the only issue in the case. It matters not that the issue was presented in each of two cases tried together. The result was the same. Code Section 10654; Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461.

(2) Was the paper writing which plaintiff proposed for probate executed in conformity with laws of this state regulating the execution of wills?

Specifically, the question is this: Did the two subscribing witnesses sign the instrument in the presence of each other?

These facts are established without controversy: Dave Hipsh was seventy-eight years old when he died. On or about July 8, 1946, he told Morgan Eslick in the room of Mr. Hipsh in Fayetteville, Tennessee, that he had his will ready. It was typewritten. Only he and Mr. Eslick were present. (In this opinion we shall refer to the paper writing as the will, and to Mr. Hipsh as the testator, for Convenience.) Mr. Eslick read the will, gave Mr. Hipsh his fountain pen, and Mr. Hipsh signed the will in the presence of Mr. Eslick. No other person was present when Mr. Hipsh signed the will.

After the will was signed, Mr. Eslick told Mr. Hipsh that he must have two witnesses to the will. The testator stated that he wanted G. H. Scott and C. N. Jackson to witness his will. Mr. Eslick and Mr. Hipsh went to the Public Square in Fayetteville, Tennessee, where they located G. H. Scott, who signed the will on the Public Square as one of the attesting witnesses. C. N. Jackson, the other attesting witness, was not present when G. H. Scott signed the will. No person was present when G. H. Scott signed the will, except the testator and Morgan Eslick. Mr. Jackson was "out of town" that day.

The next morning, Morgan Eslick met C. N. Jackson on the Public Square in Fayetteville, Tennesse, and told him Mr. Hipsh wanted him to sign his will. Whereupon, Mr. Eslick and C. N. Jackson went to the room of the testator and C. N. Jackson signed the will as a witness in the presence of the testator and Morgan Eslick. G. H. Scott was not present when C. N. Jackson signed the will.

The proof does not show by whom the paper writing was prepared. It has no attestation clause.

A few days after C. N. Jackson signed the will, the testator, C. N. Jackson, and G. H. Scott met casually at the band stand on the Public Square in Fayetteville, Tennessee. At this time Mr. Hipsh "thanked" G. H. Scott and C. N. Jackson for signing his will. They stated, in substance, that they were glad to do it. The paper writing was not present at this meeting at the band stand.

About three weeks before Mr. Hipsh died, he gave this written instrument to Morgan Eslick and it was in the possession of Mr. Eslick until he offered it for probate.

There is proof in the record to the effect that G. H. Scott and C. N. Jackson, the witnesses, told attorneys for defendants shortly after the county judge refused to probate the will that the only time Mr. Hipsh ever spoke

to them about the will was when they signed it. We have discarded this evidence, however, on the motion of defendants for directed verdict and have accepted as true the testimony that the conversation at the band stand did occur. Tennessee Central Railway Company v. McCowan, et ux., 28 Tenn. App. 225, 188 S. W. (2d) 931.

The execution of wills in this state is governed by Chapter 125 Public Acts of 1941, Code Sections 8098.1 to 8098.9, the title of the legislative Act being, ''An Act to make uniform the execution of wills and repealing all acts in conflict therewith.''

Section 4 of this Act provides:

''Execution. The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two witnesses as follows:

''(1) Testator. The testator shall signify to the attesting witnesses that the instrument is his will and either

''(a) Himself sign,

''(b) Acknowledge his signature already made, or

''(c) At his direction and in his presence have someone else sign his name for him, and

''(d) In any of the above cases the act must be done in the presence of two or more attesting witnesses.

''(2) Witnesses. The attesting witnesses must sign

''(a) In the presence of the testator, and

''(b) In the presence of each other.''

The cardinal rule of statutory construction is to ascertain the intent of the legislature and give effect thereto. Woodroof v. City of Nashville, 183 Tenn. 483, 192 S. W. (2d) 1013.

The conditions under which property may be transferred by will in this state may be prescribed by legislature enactment. Compliance with such prescribed conditions is essential to the execution of a will. Allen

v. Huff, 9 Tenn. 404; Epperson v. White, 156 Tenn. 155, 299 S. W. 812, 57 A. L. R. 601; Fann v. Fann, 186 Tenn. 127, 208 S. W. (2d) 542; Fransioli v. Podesta, 21 Tenn. App. 577, 113 S. W. (2d) 769.

"There is no such thing as voidable will; it must be either good or void." Sizer's Pritchard Law of Wills and Executors, Second Edition, Section 81.

Under Chapter 125, Section 4, Acts of 1941, the requirements for the execution of a will are divided into two parts.

(1) *Testator*s "The testator shall signify to the attesting witnesses that the instrument is his will."

After testator has made known to the attesting witnesses that the instrument is his will, he may pursue one of three courses: (a) "Himself sign," (b) "Acknowledge his signature already made," or (c) "At his direction and in his presence have someone else sign his name for him.

Either act (a), or (b), or (c) must be done in the presence of two or more attesting witnesses; that is, the testator must sign himself, or acknowledge his signature already made, or have his name signed for him under the prescribed conditions in the presence of two or more attesting witnesses. When these requirements have been met, the first step towards the execution of the will has been taken—the testator's name appears on the instrument as required by statute.

(2) *Witnesses*: "The attesting witnesses *must sign* (a) In the presence of the testator, and (b) In the presence of each other." (Italics in this opinion added.)

The testator is given an alternative . He may "sign" or "acknowledge his signature already made."

No such latitude is given to the witnesses. Under the plain, unambiguous terms of the statute, the attesting

witnesses *"must sign . . . In the presence of the testator and . . . In the presence of each other"*; not acknowledge their signatures already made.

■ The fact that the legislature gave the testator the alternative of signing himself or acknowledging his signature already made in the presence of attesting witnesses, and did not give such alternative to the witnesses, clearly shows that the legislature never intended for the witnesses to a will to be allowed to sign separately, and then acknowledge in the presence of the testator and in the presence of each other that such signatures, already made, were their signatures.

■ If we should, by judicial construction, hold that attesting witnesses could, in the presence of the testator and in the presence of each other, acknowledge their signatures which were signed separately, the will would still be invalid under the facts of this case. These witnesses made no attempt to acknowledge their signatures when they and Mr. Hipsh were together at the band stand some days after they had signed the will separately. The physical paper was not there at the band stand. They merely replied when Mr. Hipsh thanked them for signing his will that they were glad to do so.

This statute requires the presence of the testator, of at least two attesting witnesses, and of necessity the physical presence of the instrument itself when the attesting witnesses *sign* the instrument. It would be difficult to practice fraud and deception under the conditions prescribed by the statute.

If we should establish the rule that the witnesses could sign separately, then meet with the testator in a few days when the paper writing was not present and casually discuss amongst each other that they had signed the paper and thus the requirements of the statute would be met,

the door would be wide open for the practice of fraud and deception. The validity of the will would depend upon the later meeting and what happened at such meeting.

Suppose both witnesses were dead. Proof could then be made of the later meeting by other witnesses and the will would be valid under the proponent's interpretation of this statute. We think the legislature intended to avoid such opportunities for fraud, uncertainty, and mistake when it plainly stated that, "the attesting witnesses *must sign* (a) In the presence of the testator, and (b) In the presence of each other."

It is the duty of the courts to enforce the plain mandates of the legislature. The assignments of error are sustained. The judgment of the circuit court is reversed. Judgment will be entered here that the instrument in question is not the will of Dave Hipsh and, therefore, not entitled to probate. The paper writing was not his will. All costs will follow the judgment. Remand the cause to the circuit court for further proceedings consistent with this opinion.

Felts and Howell, J.J., concur.