# FARRELL v. METROPOLITAN LIFE INS. CO.—230 S. W. (2d) 192.

Middle Section.   February 24, 1950.

Petition for Certiorari denied by Supreme Court, May 5, 1950.

116

Burt Francis, of Nashville, for appellant.

Moore & Ewing, of Nashville, for appellee.

HICKERSON, J.  R. L. Farrell was shot on June 4, 1947, and died from his wounds on June 19, 1947. He had two policies of insurance in the Metropolitan Life Insurance Company aggregating $2,500.00 face amount. The policies provided for double indemnity: "Upon receipt at the Home Office of due proof of the death of the Insured, while this provision is in effect, as the result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means."

The Metropolitan paid the face amount of the policy, but denied liability for double indemnity on the ground that insured did not meet his death, "as a result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means."

This suit resulted to collect upon the double indemnity features of the policies. The case was tried by chancellor and jury. At the conclusion of all the testimony, the chancellor withdrew the issues from the jury and

dismissed complainant's suit. Complainant appealed to this court.

There is only one question to determine: Should the trial court have submitted to the jury the question whether insured met his death, "as a result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means"?

■ In considering this question we are compelled to take that view of the evidence most favorable to the cause of action stated in complainant's bill, and give her the benefit of all inferences favorable to her which may be reasonably drawn from such evidence; and discard all countervailing evidence. Viewing the evidence in this manner, if the minds of reasonable men might differ on the facts to be proved, the case must go to the jury. Eslick v. Wodicka, 31 Tenn. App. 333, 215 S. W. (2d) 12; Morgan v. Tenn. Central Railway Co., 31 Tenn. App. 409, 216 S. W. (2d) 32; McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356; Lackey v. Metropolitan Life Insurance Co., 30 Tenn. App. 390, 206 S. W. (2d) 806; Jones v. Noel, 30 Tenn. App. 184, 204 S. W. (2d) 336; Poole v. First National Bank of Smyrna, 29 Tenn. App. 327, 196 S. W. (2d) 563.

In Mutual Life Insurance Co. of New York v. Distretti, 159 Tenn. 138, 17 S. W. (2d) 11, 12, our Supreme Court held: "It may be conceded in the case under consideration that Distretti was guilty of no misconduct; that he was within his rights in undertaking to halt these bandits by whom he had been robbed. If, however, he voluntarily and intentionally did a thing from which, as a reasonable man, he foresaw or should have foreseen that death or injury might result, such death or injury was not an accident. Unless reasonable men could reach

different conclusions as to the probable result of Distretti's conduct on this occasion, there was no question for the jury."

The Supreme Court followed this statement of the rule in McGuire v. Metropolitan Life Insurance Co., 164 Tenn. 32, 46 S. W. (2d) 53; and in Winton v. Metropolitan Life Insurance Co., 174 Tenn. 252, 124 S. W. (2d) 712.

5 Couch Cyclopedia of Insurance Law, Section 1158 states: "Injuries sustained by an insured in an encounter brought about by his assault upon another with a deadly weapon, or upon one who he knew had such a weapon, are not sustained by accident or by accidental means, since in such a case the injury or death is the natural and probable consequence of his own act. And this, although the assailant did not know that his victim was armed. And even where the insured did not use a deadly weapon in committing the assault, the injury suffered by him has been regarded as not one sustained by accidental means, but one which might naturally have been expected under the circumstances."

There is no material conflict in the evidence. Insured went to a beer parlor or restaurant in Nashville on the night he was shot. A man who was with him quarrelled with a woman who was at this restaurant. The quarrel became so bitter that the woman and insured's male companion called each other vile names. Insured took up the quarrel and slapped the woman and slapped a man who was with her. This quarrel and fight occurred just outside the door of the restaurant or beer parlor. James (Tommy) Keaton came out of the cafe about the time the quarrel and fight were taking place. Insured promptly started a quarrel with Keaton and began ad-

vancing upon him. Keaton had a gun and warned insured to stop. Keaton retreated or backed up some twenty feet warning insured all the time to quit following him. Insured did not heed the warning but kept coming towards Keaton who had the pistol openly in his hand at the same time abusing Keaton by the use of very vile language.

██ When insured was close to Keaton he "lunged" toward Keaton and Keaton shot him. Insured was the aggressor, and we think the minds of all reasonable men must reach the conclusion that death or great bodily harm would probably result to insured from his own conduct. Under such circumstances his death was not accidental within the meaning of the insurance policies. The Chancellor properly withdrew the issues from the jury and dismissed complainant's suit.

The assignments of error are overruled and the decree of the chancery court is affirmed with all costs.

Felts and Howell, JJ., concur.