Cora Lee Baker

*v.*

The National Life & Accident Insurance Company.

*(Knoxville,* September Term, 1956)

Opinion filed December 7, 1956.

Rehearing Denied February 8, 1957.

Allen M. Elliott and Marne S. Matherne, Knoxville, for appellant.

Key & Lee, Knoxville, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a suit to recover $2,000 as "additional benefit for death by accidental means" under the terms of a policy of industrial life insurance issued by defendant upon the life of complainant's husband, Raymond V. Baker.

The cause was tried before the Chancellor upon a written stipulation of the facts, and resulted in a decree dismissing the suit.

The Insurance Company paid the principal sum of the policy, but denied liability under the additional benefit, or double indemnity provision of the policy which provides:

"Upon receipt of due proof that the death of the insured resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, the company will pay an additional benefit equal to the amount of insurance, * * *."

The only defense in the cause is that the insured did not come to his death through *"accidental means."*

It is stipulated that the insured came to his death in the following manner:

"On November 21, 1955, the said Raymond V. Baker and James Bowerman visited the home of Bowerman, intending to feed some cattle which Bowerman owned. That another man by the name of McCall was along. Bowerman had quite a collection of guns and fishing rods, and was showing these items to McCall. Baker was sitting in the kitchen eating some cracklings and came into the bedroom door where Bowerman and McCall were, and Bowerman then took a 32 calibre revolver from a dresser drawer and showed it to Baker, Baker wanted to know how many times it would shoot and seemed interested in the gun. The three of them returned to the kitchen. In the meantime Baker had finished eating, picked up his empty plate, and suggested that Bowerman shoot it. Bowerman did shoot the plate through the center without breaking it. Baker then picked up a baked sweet potato, placed it on his head, and asked Bowerman if he could hit it. Said Bowerman declined to fire at the potato because he was afraid it would splatter. Baker then picked up a pepper can, which was five inches high and two inches wide, placed it on his head and invited Bowerman to fire at it. Bowerman agreed and told Baker to keep still. Baker said, 'Don't miss the can.' Bowerman at that time was standing eight or ten feet from Baker, took careful aim and started squeezing the trigger on his revolver. Just then Baker moved his head slightly forward, thus causing the pepper can to tilt and start

falling forward. Baker suddenly jerked his head up, but Bowerman's reflexes did not act fast enough for him to release his grip on the trigger, and instead of hitting the can the bullet entered Baker's head, causing his death, instantly.''

From the above stipulation of facts we are of the opinion that the insured should have reasonably foreseen that death, or injury, might result from his own voluntary act. *Mutual Life Insurance Co. of New York v. Distretti,* 159 Tenn. 138, 17 S.W.2d 11; *McGuire v. Metropolitan Life Insurance Co.,* 164 Tenn. 32, 46 S.W.2d 53; *Winton v. Metropolitan Life Insurance Co.,* 174 Tenn. 252, 124 S.W.2d 712; *Farrell v. Metropolitan Life Insurance Co.,* 33 Tenn. App. 115, 230 S.W.2d 192.

In the Distretti case, *supra,* the case turned on the question whether the insured came to his death through "accidental means." The insured owned a store in the suburb of Memphis. Two armed bandits held up his store, then fled and the insured followed them out into the street and opened fire on them. They returned the fire and shot the insured to death.

In the course of the opinion denying recovery the Court stated that any reasonable man must have anticipated the great probability of the fatal result of Distretti's conduct on this occasion; that the Court could not accordingly see, in any view of the evidence, how his death could be regarded as accidental.

The Court further held that if the insured voluntarily and intentionally did a thing from which as a reasonable man he foresaw or should have foreseen that death, or injury might result, such death, or injury was not an accident.

In *American Casualty Co. v. Hyder,* 8 CCH Life Cases, 947, this Court held that the death of the insured was not accidental under the following circumstances:

The insured, a young man, in company with another man, spent the evening and until shortly after midnight at a house of ill repute in Sparta, Tennessee. Upon leaving this house the two men went to a nearby filling station, procured a quart of gasoline, went to the rest room and began washing their privates with the gasoline as a sanitary measure. While engaged in this chore, the insured asked his companion to strike a match so that he could better see what he was doing. When the match was struck, the entire rest room burst into flames and the insured received burns, from which he died. This Court reversed the two lower courts and dismissed the suit and among other things said:

" 'The general rule is that an injury is not produced by accidental means, within the meaning of this policy, where the injury is the natural result of an act or acts in which the insured intentionally engages. A person may do certain acts, the result of which produces unforeseen consequences resulting in which is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural ordinary movement excuted exactly as was intended. Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental.' "

█ Death is not caused by accidental means, if it is a natural and foreseeable result of a voluntary, though unusual and unnecessary act or course of conduct of the insured. Target practice with a pistol and with a pepper-can sitting on the head of a human being as the target is neither a usual nor necessary avocation. One who volunteers his head for such an experience must anticipate injury, if he is a normal person.

It results that we find no error in the decree of the lower court, and it is affirmed.