Mrs. Peggy Roberson Brewer JAUDON, Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA

and

Mrs. Alice L. Roberson Colbert, Appellees.

No. 14033.

United States Court of Appeals Sixth Circuit.

June 13, 1960.

Phil Stone, of James Stone & Sons, Oxford, Miss., Ralph O. White, of White & Finch, Batesville, Miss., and T. H. Freeland, III, of James Stone & Sons, Oxford, Miss., on brief for appellant.

Daniel D. Canale, of Montedonico, Boone, Gilliland, Heiskell & Loch, Joseph W. Evans, of Wilkes & Evans, Memphis, Tenn., for appellee.

Before MILLER and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.

WEICK, Circuit Judge.

The action in the District Court was for interpleader and declaratory judgment. It was brought by plaintiff, Prudential Life Insurance Company, against defendants, Mrs. Alice L. Roberson Colbert and Mrs. Peggy Roberson Brewer Jaudon. Mrs. Colbert was the widow of the insured, Murray A. Roberson, and the named beneficiary of his insurance. She had remarried at the time of trial. Mrs. Jaudon was one of his sisters.

Two questions were at issue in this case.

The first question was whether the death of the insured Murray Roberson resulted from accidental means as provided in Group Accident Policy No. A-908, Certificate No. 2204, issued by the plaintiff insurer. Plaintiff denied liability under this policy, contending that the circumstances under which insured met his death were not accidental within the meaning of the policy provisions.

The second question related to the right, as between Mrs. Colbert and Mrs. Jaudon, to the proceeds of the above mentioned policy, if plaintiff were liable for payment thereunder, and to the additional sum of $2,000 payable upon the death of insured under the provisions of Group Life Insurance Policy G–4121, Certificate No. 2204. Plaintiff admitted liability for the death benefits due under the life insurance policy.

Mrs. Colbert claimed the proceeds of both the Accident and Life policies as the named beneficiary thereof. Mrs. Jaudon claimed the proceeds as a verbally changed beneficiary thereof.

The District Court found that insured had voluntarily and deliberately engaged in an affray which led to his death; that his death cannot be said to have been accidental within the terms of the policy; that plaintiff was not liable under the Accident policy; that insured had a mere unexecuted intention to change his beneficiary; that such an unexecuted intention was not sufficient to effect a change of beneficiary; that Mrs. Colbert, the widow, was entitled to the proceeds of the Life policy.

Mrs. Jaudon, the sister, has appealed from the decision of the District Court denying her claim as beneficiary of the policies and holding the plaintiff not liable on the Accident policy. Mrs. Colbert has not appealed from the decision below denying her claim to accidental death benefits.

█ The questions the District Court was called upon to resolve were factual in nature. This court would have no right to overturn his decision unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; United

States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

The Accident policy provided for payment for accidental death which occurred as:

a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means.

There is no dispute that insured died through external and violent means. The only issue is if those means were accidental.

The facts, as found by the District Court, leading to the death of Murray Roberson are as follows:

For several months prior to December 15, 1957, insured had been keeping company with the wife of C. V. Farrow, Jr. Mr. Farrow was aware of that fact and, at some earlier time, had an altercation with insured during which insured threatened to kill Farrow and his wife. In order to avoid further trouble with insured, Farrow moved his family from Batesville, Mississippi, to a house on a secluded, dead-end, narrow, gravel road about fifteen miles from Batesville.

Farrow was approximately 37 years old, weighed 135 pounds, was 5 feet 9¾ inches tall, and had only one hand. Insured was 31 years old, weighed about 175 pounds and was over 6 feet tall.

On Sunday afternoon, December 15, 1957, insured, with four male companions, was riding in his car in and around Batesville. They had been drinking whiskey since about noon, or shortly thereafter. The insured was driving, and turned down the road on which Farrow lived. He proceeded past Farrow's home to the end of the dead-end road, about 500 feet beyond. He turned the car around, stopped at a point 400 feet from Farrow's home, and got out of the car.

Farrow had seen insured's car pass his home, turn around and insured get out. Remembering insured's threats he became fearful for his own and his family's safety. He went into his house, secured a pistol and stepped to his front porch, which was approximately 12 feet from the roadway.

Mr. Farrow walked from his porch to the roadway in front of his home, held the pistol in view, and called to insured to get back in his car and leave them alone. Instead, insured began advancing in a threatening manner, first walking and then running directly at Farrow, repeatedly yelling, "I'm going to kill you, Farrow, you s. o. b." Farrow fired three of the four rounds in his pistol into the air as warning shots, while insured continued to advance upon him.

When insured was about 10 feet from Farrow he lunged at him. Farrow, in apprehension and great fear for his own life and that of his wife, fired the remaining bullet in his pistol at insured. The shot struck and killed Murray Roberson.

▮ There is substantial evidence in the record in support of the foregoing findings.

The law of Tennessee is that when an insured is engaged in an affray and advancing upon an adversary who is armed with a deadly weapon and should have reasonably foreseen that bodily injury or death might result as a natural and probable consequence of his act, his death as a result thereof cannot be said to have resulted from accident within the meaning of an Accident policy of the nature of that in question. Mutual Life Insurance Co. of New York v. Disretti, 159 Tenn. 138, 17 S.W.2d 11; Union Casualty & Surety Co. v. Harroll, 98 Tenn. 591, 40 S.W. 1080; Farrell v. Metropolitan Life Insurance Co., 33 Tenn.App. 115, 230 S.W.2d 192. See Baker v. National Life & Accident Insurance Co., 201 Tenn. 247, 298 S.W.2d 715.

The District Court was correct in concluding that insured failed to heed the danger to his life inherent in the circumstances of the encounter with Farrow and his death was therefore not accidental.

Insurance Certificate No. 2204 on Group Life Policy G-4121, issued to Murray Roberson, provided that:

"The beneficiary may be changed in accordance with the terms of the Policy by said employee at any time while the insurance on his or her life is in force by notifying the Company through the Employer. Such change shall take effect when due acknowledgment thereof is furnished by the Company to such person * * *."

The policy itself provided:

"Any person insured hereunder may at any time while insured hereunder change his (or her) Beneficiary or Beneficiaries by written notice through the Employer to the Company at its Home Office, on a form furnished by it. Such change shall take effect when due acknowledgment thereof is furnished such person insured * * *."

There is no question that the policy provisions were not complied with. Mrs. Jaudon claims, however, that she is the verbally designated beneficiary of the policy, having been substituted for Mrs. Colbert.

On Friday, December 13, 1957, insured went to the office of his employer. His actions and intent are described in a letter from his employer to the insurance company.

"[Insured] wanted to change the beneficiary on his life insurance from his wife to his sister. As it happened we did not have any 'Change of Beneficiary' cards in the office and that day we sent to the Prudential Insurance company for a supply."

Insured never got a chance to fill out the proper form, as he met his death Sunday, December 15, 1957.

Mrs. Jaudon testified that insured told her that he had changed his insurance, so as to make her the beneficiary. Mrs. Colbert testified that she knew of no change of beneficiary.

█ Under the Tennessee authorities a mere unexecuted intention on the part of an insured to change his beneficiary is not enough. There must be a substantial compliance with the provisions of the policy for the change of beneficiary to be effective. Cronbach v. Aetna Life Insurance Co., 153 Tenn. 362, 367, 284 S.W. 72; Life and Casualty Co. of Tennessee v. Cornish, Tenn.App., 315 S.W.2d 6; Barnes v. Prudential Insurance Co., 28 Tenn.App. 109, 186 S.W.2d 918.

The District Court found that insured had two sisters, and that the letter relating to the occurrence of the insured's visit to his employer's office to request a change of beneficiary did not indicate which one of his two sisters was to be designated beneficiary. There was no evidence that the insurer or any of its agents had knowledge of the intent of the insured to designate Mrs. Jaudon as his beneficiary. Assuming that the insured had the undisclosed intent to designate Mrs. Jaudon as beneficiary, he might have changed his mind before his employer received the change of beneficiary form. The trouble here was that the insured did nothing to effectuate the change of beneficiary other than to tell someone in his employer's office that he wanted to name his sister as beneficiary.

█ The District Court was right in concluding that, under these circumstances, the insured had a mere unexecuted intention to change the beneficiaries of his policies and that this was insufficient to displace the designated beneficiaries thereof.

The decision of the District Court is affirmed.