924 F.2d 1057
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AETNA LIFE INSURANCE COMPANY, South Central Bell Telephone
Company, Bellsouth Corporation, Plaintiffs,
v.
Pauline Carol WEATHERFORD, Defendant-Appellant,
and
Rebecca Weatherford, Defendant-Appellee.
 No. 90-5585.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1991.
 
 Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Pauline Carol Weatherford appeals the district court's order granting summary judgment to defendant-appellee Rebecca Weatherford in this life insurance interpleader action. For the following reasons, we reverse the district court's summary judgment order entered for Rebecca Weatherford, and grant Pauline Weatherford's motion for summary judgment.
 
 I.
 
 2
 On March 31, 1958, Earl Weatherford ("Weatherford"), a technician at the South Central Bell Telephone Company--a subsidiary of the BellSouth Corporation ("BellSouth")--enrolled in BellSouth's group life insurance policy (provided by the Aetna Life Insurance Company) and named his wife, Pauline Carol Weatherford ("Pauline"), beneficiary. Thereafter, on November 20, 1980, Weatherford enrolled in a supplemental Aetna policy (BellSouth paid the premiums on the basic policy; Weatherford paid the premiums on the supplemental policy) and again named Pauline as sole beneficiary. Less than four years later, however, Pauline and Earl Weatherford were divorced. The January 23, 1984 divorce decree did not mention the Aetna policies.
 
 
 3
 Earl Weatherford subsequently married Rebecca Weatherford ("Rebecca") on March 3, 1984. On July 5, 1984, Weatherford partially completed (by checking a box labeled "Change in Beneficiary Designation"), signed and dated a "South Central Bell Group Life Insurance Enrollment & Beneficiary Designation" form ("Form PR-6624"). Weatherford failed, however, to complete the PR-6624 Form--most notably: (1) Weatherford failed to designate any primary or contingent beneficiaries; (2) Weatherford failed to obtain a witness' signature as required; and (3) Weatherford failed to mail, or otherwise deliver, the PR-6624 Form to South Central Bell's Personnel Office, or to Aetna's headquarters, as required under the Aetna policies as administered by South Central Bell. In fact, the uncompleted PR-6624 Form was found in Weatherford's briefcase, in a spare bedroom, following Weatherford's death in 1987.
 
 
 4
 Not surprisingly, neither South Central Bell nor Aetna had Weatherford's uncompleted July 5, 1984 PR-6624 Form in its files. In fact, the most recent beneficiary designation found in the companies' files following Weatherford's June 16, 1987 death was the November 20, 1980, PR-6624 Form designating Pauline Weatherford as the sole beneficiary under the Aetna policies.
 
 
 5
 Though not directly relevant to BellSouth's group life coverage, Rebecca Weatherford urges this court to find that Earl Weatherford's Form SN-1020 (applicable to BellSouth's employee benefit plans other than group life insurance; signed by Weatherford on April 7, 1987--designating "my spouse as my only Primary Beneficiary") conclusively establishes Weatherford's intent to make Rebecca the beneficiary of his Aetna policies. It must be noted, however, that this form had not been submitted to BellSouth's Personnel Office; it was instead found in Weatherford's desk following his death. Moreover, the uncompleted form "would have been returned because [Weatherford] did not check which plan he wanted to change to." Beverly Simpkins' June 27, 1988 Deposition at 24. Moreover, it is uncontroverted that South Central Bell's SN-1020 Form does not directly affect an employee's group life insurance coverage.
 
 
 6
 In April 1987, South Central Bell informed its employees that their supplemental group life insurance coverage (i.e., the supplemental portion of their Aetna coverage) was being replaced by FlexLife (provided by Travelers Life Insurance Company) effective July 1, 1987. FlexLife offered eligible employees the option to purchase expanded life insurance coverage (up to four-times an employee's annual pay) at the employee's expense. The basic group life insurance, however, remained with Aetna.
 
 
 7
 To obtain FlexLife coverage, employees had to apply during the March 2, 1987--June 12, 1987 enrollment period. On April 17, 1987, Weatherford executed (but did not mail) FlexLife's "Application or Waiver of Insurance" to obtain supplemental coverage equal to twice his salary. Weatherford named his wife, Rebecca, as sole beneficiary.
 
 
 8
 Weatherford suffered a stroke on June 8, 1987, and was hospitalized (in a coma) until his death on June 16, 1987. On June 15, 1987 (three days after the enrollment period had expired), Travelers received Weatherford's FlexLife application designating Rebecca as beneficiary; it is unknown who mailed the FlexLife application (dated April 17, 1987) in light of Weatherford's incapacitating stroke. Nevertheless, because BellSouth's FlexLife policies did not become effective until July 1, 1987, the parties stipulated that "[a]t the time of Earl W. Weatherford's death, the FlexLife insurance was not in effect." Stipulation of Facts at 6.
 
 
 9
 Immediately following Earl Weatherford's death, a three-page handwritten document (solely in Weatherford's handwriting, but not signed) dated November 17, 1986, was found in Weatherford's bedroom dresser drawer. This purported holographic will provided, inter alia:
 
 
 10
 Everything else goes to Rebecca to do with as she wishes. She should give something personal to my Sisters and Brothers that they want and she doesn't.
 
 
 11
 I also want everybody to give Rebecca the respect she deserves for putting up with me all these years and bringing love and happiness back into my life that was missing for so long. She made me feel young and alive that I thought was gone for me. If you love me don't give her any more problems because she has had enough.
 
 
 12
 Carol has received all she should ever receive.
 
 
 13
 Joint Appendix at 98-100.
 
 
 14
 On August 26, 1988, fourteen months after Earl Weatherford's death, Rebecca Weatherford's attorney mailed: (1) Weatherford's signed, but uncompleted, SN-1020 Form (used by South Central Bell for benefits other than group life insurance); and (2) the Travelers Life Insurance application (for FlexLife coverage) to Aetna in an attempt to comply with the beneficiary terms of the Aetna group life insurance policies.
 
 
 15
 Aetna Life Insurance Company filed this interpleader action in district court (basing jurisdiction on diversity of citizenship) following Earl Weatherford's death. Aetna: (1) disclaimed any interest in the $66,000 it owed under Weatherford's basic and supplemental life insurance policies; (2) joined Rebecca and Pauline Weatherford as defendants (pursuant to Fed.R.Civ.P. 22(1)); (3) deposited the money with the court; and (4) sought discharge from all further liability. Pursuant to an Agreed Order dated July 22, 1988, Aetna deposited $68,426.62 with the court (representing death benefits plus accrued interest). The district court subsequently dismissed Aetna, South Central Bell and BellSouth from this action, with prejudice.
 
 
 16
 Pauline and Rebecca thereafter filed motions for summary judgment. On October 26, 1988, the summary judgment motions were referred to a magistrate pursuant to 28 U.S.C. Sec. 636(b)(1)(B). After analyzing the relevant facts, and the applicable law, the magistrate recommended that the district court grant Pauline Weatherford's summary judgment motion. Maintaining that Earl Weatherford had substantially complied with Aetna's change of beneficiary provisions (thereby evidencing his intent to make her the policies' beneficiary), Rebecca submitted timely objections to the magistrate's report and recommendation. Pauline, however, insisted that Weatherford's 1980 beneficiary designation govern this action.
 
 
 17
 The district court subsequently rejected the magistrate's report and recommendation and granted Rebecca Weatherford's summary judgment motion thereby declaring Rebecca the beneficiary of Earl Weatherford's life insurance:
 
 
 18
 Indeed, Earl Weatherford's manner of changing his beneficiary designation was unorthodox, but Aetna's policy is broad enough to accommodate such unique compliance. Although Earl Weatherford was apparently confused as to which form to complete, his efforts constituted written requests effective April 7 and 17, 1987, which were filed with Aetna at its home office in Hartford, Connecticut. Therefore, the Court finds that Earl Weatherford took affirmative steps during his life to change the beneficiary of his life insurance from his former wife to his current wife and that this sufficiently meets the substantial compliance test.
 
 
 19
 District Court's March 30, 1990 Memorandum at 8.
 
 
 20
 Pauline Weatherford thereafter filed a timely notice of appeal.
 
 II.
 A.
 
 21
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Co. v. Pennsylvania Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In its review, this court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 22
 Though the moving party has the burden of conclusively showing that no genuine issue of material fact exists, id., the nonmoving party cannot rest on its pleadings in the face of a summary judgment motion, but must come forward with some probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); 60 Ivy St. Corp., 822 F.2d at 1435.
 
 
 23
 "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. 60 Ivy St. Corp., 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).
 
 B.
 
 24
 Though the magistrate conducted a comprehensive analysis to determine whether federal common law (pursuant to ERISA pre-emption), Tennessee law, or Georgia law governs this action, the district court correctly concluded that "Rebecca Weatherford's objection on the issue of whether the Magistrate correctly applied federal common law or state insurance law is moot," District Court's March 30, 1990 Memorandum at 3, because Tennessee, Georgia, and federal common law all employ the "substantial compliance" test. Bohannon v. Manhattan Life Ins. Co., 555 F.2d 1205, 1210 (5th Cir.1977) (construing Georgia law) ("A change-of-beneficiary is effective when it is clear that the insured intends a change, has a right to make a change, and takes reasonable steps to bring about a change. Generally, substantial compliance with these conditions is sufficient."); Magruder v. Northwestern Mut. Life Ins. Co., 512 F.2d 507, 509 (6th Cir.1975) (construing Tennessee law) (A "change of beneficiary form [must be] submitted in actual or substantial compliance with the terms of the insurance policy."); Republic Nat'l Life Ins. Co. v. Sackmann, 324 F.2d 756, 758 (6th Cir.1963) (construing Tennessee law) (the beneficiary in an insurance policy may be changed if the insured substantially complies with the provisions of the policy--substantial compliance requires that the insured do everything he can to make the change); Jaudon v. Prudential Ins. Co. of America, 279 F.2d 730, 733 (6th Cir.1960) (same); Faircloth v. Coleman, 86 S.E.2d 107, 110 (Ga.1955) (same); Stoker v. Compton, 643 S.W.2d 895, 897-98 (Tenn.Ct.App.1981) (same).
 
 
 25
 Accordingly, we must now determine whether Earl Weatherford substantially complied with the beneficiary change provisions of his Aetna policies (basic and supplemental coverage).
 
 C.
 
 26
 In his report and recommendation, the magistrate noted that:
 
 
 27
 Rebecca Weatherford, the widow, cites four acts by [Earl] Weatherford to establish his substantial compliance with the policy's provisions on changes of beneficiaries and to effect a change in the designation of his beneficiary: (1) the incompleted Form PR-6624; (2) the April 7, 1987 SN-1020; (3) the June 15, 1987 FlexLife application; and (4) the April 17, 1987 forms designating Rebecca Weatherford as his beneficiary. In evaluating these facts, Rebecca Weatherford also cites the divorce decree, with its property settlement agreement between Weatherford and Pauline Weatherford as well as Weatherford's purported will and his conversations regarding his intentions to have his insurance policy proceeds distributed to Rebecca Weatherford and his children. Moreover, Rebecca Weatherford also argues that there was confusion among South Central Bell employees regarding enrollment in the FlexLife Plan.
 
 
 28
 Magistrate's September 12, 1989 Report and Recommendation at 29.
 
 
 29
 With respect to Form PR-6624, it is undisputed that Weatherford failed to: (1) elect enrollment; (2) designate a beneficiary; (3) designate the number and type of beneficiaries; (4) obtain a witness' signature; and (5) mail, or otherwise deliver, the form to South Central Bell or Aetna. Speculation as to why this form was not completed and mailed would be futile. Accordingly, we must conclude that Weatherford's uncompleted PR-6624 Form (found after his death in his briefcase) does not alter Pauline Weatherford's right to the insurance proceeds.
 
 
 30
 As the magistrate correctly noted, the partially completed Form SN-1020 (found in Weatherford's desk following his death) is similarly irrelevant to this action:
 
 
 31
 [Though,] to a degree, this form indicates Weatherford's intention to change his beneficiary at least on some of his employee benefit plans, [because] this latter form does not include basic life insurance coverage, it is difficult to accept this form as reflecting Weatherford's intent to change the beneficiary on his basic group life insurance. Although Rebecca Weatherford presented evidence that this Form SN-1020 was completed properly because Weatherford was confused as to the proper form to use, the form itself is clear as to the benefit plans that it affects.... Thus, this form does not represent all that Earl Weatherford could do to effect a change in his named beneficiary on this life insurance policy.
 
 
 32
 Magistrate's September 12, 1989 Report and Recommendation at 31. Accordingly, the decedent's uncompleted and undelivered SN-1020 Form fails to prove Weatherford's resolve to change beneficiaries on his Aetna life insurance policies.
 
 
 33
 Weatherford's April 17, 1987 FlexLife application (received by Travelers' administrator on June 15, 1987--three days after the enrollment period had expired) similarly fails to alter Pauline Weatherford's rights under the Aetna policies. Though Rebecca Weatherford argues that the FlexLife application unquestionably demonstrates Earl Weatherford's desire to make her the beneficiary of his life insurance proceeds, it is clear that the decedent did not do "all that he could to comply with the provisions of the policy." Magruder, 512 F.2d at 509 (quoting Cronbach v. Aetna Life Ins. Co., 153 Tenn. 362, 367 (1926)). Simply stated, Earl Weatherford's actions did not demonstrate a clear intent to change the Aetna policies' beneficiaries.
 
 
 34
 The appellee alternatively asserts that her attorney's act of mailing the Travelers' FlexLife application to Aetna fourteen months following her husband's death satisfies Aetna's beneficiary provision:
 
 
 35
 An employee, whether or not employment has terminated, may designate a beneficiary, and at any time change his designation, by written request field [sic] at the headquarters of the Policyholder or at Aetna's Home Office in Hartford, Connecticut. The designation or change will take effect as of the date the employee executes the request, whether or not he is living at the time of filing....
 
 
 36
 Aetna's Group Life Insurance Policy with BellSouth at 7050. Though the district court accepted Weatherford's FlexLife application as notice to Aetna that he wished to change beneficiaries on his Aetna policies, such a finding is erroneous and requires an unwarranted inferential leap. The fact remains that Weatherford had the Aetna form (Form PR-6624) necessary to effect the beneficiary change that Rebecca claims he intended. It can hardly be said that Earl Weatherford did "all that he could to comply with the provisions of the policy," Magruder, 512 F.2d at 509, when the uncompleted form (dated three years earlier) was found in his briefcase following his death. Accordingly, the decedent's FlexLife application does not affect Earl Weatherford's beneficiary designation under his Aetna policies.
 
 
 37
 Moreover, Earl and Pauline Weatherford's divorce decree and property settlement, Earl Weatherford's alleged verbal statements regarding the beneficiary of his life insurance, and the decedent's purported holographic will all fail to support Rebecca's claim that Earl Weatherford substantially complied with Aetna's change of beneficiary requirements.
 
 
 38
 In an analogous case, after noting that the plaintiff's "claim to the insurance proceeds must be founded either on actual or substantial compliance with the policy provisions governing the change of beneficiaries," Magruder, 512 F.2d at 508, this court held:
 
 
 39
 The failure of the insured to send the form to the company has no reasonable explanation which would invoke the equitable powers of the court. There is no question that he had ample opportunity to return the forms, or that he had the requisite physical and mental capacity to do so. He did not set the procedures in motion by placing the form changing the beneficiary in the hands of a representative of the insurance company....
 
 
 40
 Since the change of beneficiary form was not submitted in actual or substantial compliance with the terms of the insurance policy, [the district court judge] was correct in holding that the change is ineffective....
 
 
 41
 Id. at 509-10.
 
 
 42
 Because "a mere unexecuted intention on the part of an insured to change his beneficiary is not enough," Jaudon, 279 F.2d at 733, we find Pauline Weatherford to be the proper beneficiary of Earl Weatherford's life insurance proceeds. See id. ("There must be substantial compliance with the provisions of the policy for the change of beneficiary to be effective.").
 
 III.
 
 43
 For the aforementioned reasons, we REVERSE the district court's summary judgment order entered for Rebecca Weatherford, and grant Pauline Weatherford's motion for summary judgment.