**Helen Tanner JONES, Plaintiff-Appellant,**

v.

**FIREMAN'S FUND AMERICAN LIFE INS. CO., Defendant-Appellee.**

**Sherry A. TANNER, Plaintiff-Appellant,**

v.

**THE PRUDENTIAL INS. CO. OF AMERICA, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 30, 1986.

Application for Permission to Appeal Denied April 6, 1987.

R. Lanier Fogg, Memphis, for plaintiff-appellant Helen Tanner Jones.

Fred M. Ridolphi, Jr., of Spicer, Ridolphi, Flynn & Rudstrom, Memphis, for defendant-appellee, Fireman's Fund.

W. Stephen Gardner of Boone, Wellford, Clark, Langschmidt & Apperson, Memphis, for plaintiff-appellant Sherry A. Tanner.

R. Grattan Brown, Jr. and J. Mark Griffee of Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, for defendant-appellee The Prudential Ins. Co.

FARMER, Judge.

Suits were brought to recover under the accidental death provisions of policies on the life of Henry Tanner. The cases were consolidated in the trial court where all parties filed motions for summary judgment. The Chancellor granted summary judgment in favor of the defendants Prudential Insurance Company of America and Fireman's Fund American Life Insurance Company, from which the plaintiffs appeal.

Plaintiff Helen Tanner Jones is the former wife of Henry Tanner and was the beneficiary under two policies issued on his life by Fireman's Fund. Plaintiff Sherry A. Tanner was the wife of Mr. Tanner at the time of his death and the beneficiary of a policy on his life issued by Prudential. At the date of Mr. Tanner's death on November 14, 1983, Sherry and Henry Tanner had been married some eight and one-half years. Although divorce proceedings were pending, Mr. Tanner had continued to reside in the family home. The divorce case was set to be heard on November 17, 1983. Mr. Tanner had signed a reconciliation agreement but Mrs. Tanner had not signed.

On the date of his death, Mr. Tanner had dinner with his wife and two small children, ages three and five. They decided to go shopping and first returned to Mr. Tanner's office in Mrs. Tanner's car. He drove to Loehman's Plaza followed by Mrs. Tanner in her car. After spending some time in an ice cream parlor, the family went to a shoe store to buy the children shoes. It was raining and at his suggestion, Mrs. Tanner went to get his car and waited for Mr. Tanner and the children to come out of the store. The children got in the back seat and Mr. Tanner in the front seat on the passenger side. Mrs. Tanner testified that he was subject to sudden mood changes and at this point appeared to be upset. She drove his car to the area where her car was parked and parked beside it. Mr. Tanner then reached below the driver's seat of the automobile with his right hand and pulled out a pistol which he pointed at Mrs. Tanner. With his left hand, he placed Mrs. Tanner's right hand over his right hand which held the pistol. Using both hands, she pushed the pistol away from her, his finger remaining on the trigger at all times. At no time was her finger on the trigger or inside the trigger guard. No words were exchanged between the two of them during the course of the struggle. The gun discharged. Mr. Tanner got out of the passenger side, still holding the gun, walked around behind the car and collapsed. He died as a result of a gunshot wound to the chest. Frequent altercations occurred throughout the marriage. There were occasions when Mr. Tanner would strike her. Ultimately the point was reached when she would resist his attacks and fight back.

The issues presented on appeal are whether the death of Henry Tanner was accidental and whether the phrases "loss of life resulting from bodily injury caused by an accident" and "accidental bodily injury"

are ambiguous and the terms therefore strictly construed against the defendant insurors.

The Chancellor's order granting defendants' motions for summary judgment and denying plaintiffs' states in part as follows:

Specifically, the Court finds as uncontroverted facts that, at the time of the death of the insured, Henry F. Tanner, he was engaged in an unlawful act constituting at least an assault upon the person of the Plaintiff, Sherry Tanner. The Court further finds that, by placing the Plaintiff's, Sherry Tanner's, hand upon the weapon which the deceased insured was using to threaten her with at the time of his assault upon her, that the deceased insured placed himself in a position of jeopardy with a substantial likelihood of harm to himself resulting therefrom. Accordingly, and by applying the applicable reasonable man test of foreseeability to this situation, this Court finds that the Plaintiff, Sherry Tanner, could reasonably be expected to take action to defend herself under these circumstances and that the deceased insured, Henry Tanner, thereby voluntarily exposed himself to a known danger which resulted in his death, said death therefore not being an accident under the life insurance policies in question and the applicable law of the State of Tennessee.

Appellants contend that the Chancellor's decision was based on Henry Tanner voluntarily exposing himself to a known danger which resulted in his death, therefore the death was not accidental, and that he applied the principle stated in *Mutual Life Ins. Co. of New York v. Distretti*, 159 Tenn. 138, 17 S.W.2d 11 (1929). They further contend that *Mutual Ben. Health & Accident Ass'n v. Houston*, 22 Tenn.App. 570, 124 S.W.2d 722 (1938) is controlling. Mr. Distretti's store was robbed by armed bandits. As they were fleeing by automobile, he armed himself and ran outside and opened fire on them. They returned fire and Mr. Distretti was killed. In holding that his death did not occur through accidental means within the double indemnity provision of the life insurance policy, the Court stated:

We do not see how any reasonable man could have supposed armed desperadoes of this character would submit to being shot at or detained and would refrain from using their own arms to protect themselves and to effect their escape. It seems to us that any reasonable man must have anticipated the great probability of the fatal result of Distretti's conduct on this occasion. We cannot accordingly see, in any view of the evidence, how his death could be regarded as accidental.

The law to be applied in cases like this is very well settled. Although injury be intentionally inflicted by another, nevertheless, if the injury was not naturally to be foreseen by the insured, it is an accidental injury within the meaning of a policy such as the one before us. [citations omitted]

The foregoing rule is often stated with the further qualification that the insured has been guilty of no misconduct and has made no assault on the person from whom he receives the injury.

. . . .

It may be considered in the case under consideration that Distretti was guilty of no misconduct; that he was within his rights in undertaking to halt these bandits by whom he had been robbed. If, however, he voluntarily and intentionally did a thing from which, as a reasonable man, he foresaw or should have foreseen that death or injury might result, such death or injury was not an accident.

17 S.W.2d at 12.

Thus, the principle established in *Distretti* is that one who voluntarily and intentionally does a thing from which, as a reasonable man, he foresaw or should have foreseen that his death or injury might result, such death or injury is not an accident.

In *Mutual Ben. v. Houston, supra*, decedent's daughter and husband had a fight, during the course of which husband took a gun away from her which belonged to her father. She then went to her father's home and the two of them, with a friend, returned to her home for the purpose of

getting her personal belongings. The husband was in bed at the time. When the father inquired as to the whereabouts of his pistol, the husband replied that it was under his pillow. The father walked toward the bed to get the pistol, husband took the pistol from under the pillow and pointed it in the general direction of the father and daughter. The father grabbed the pistol. The husband testified that he held onto it momentarily for the purpose of telling his father-in-law not to let his wife have the pistol for fear she might shoot him. However, before he had the opportunity to express this thought, the pistol discharged immediately upon the father grabbing it, striking the father and killing him. The Court held that the trial judge did not err in submitting the facts of this case to the jury and stated:

If he voluntarily exposed himself to a known danger or injury which is intentionally inflicted, the courts will not classify the injury as accidental. [citing *Distretti* and other authority]

This inquiry is pertinent where the injury grew out of an act intentionally inflicted, but in the absence of intent, purpose, and volition on the part of the party inflicting the act, then it must be classified concededly as an accidental act. The great weight of authorities does not support the proposition that where the homicide is accidental in fact then that the deceased is chargeable with lack of care for his own safety.

124 S.W.2d at 725.

Appellants further rely upon *Martin v. Massachusetts Mutual Life Insurance Co.*, 225 Tenn. 56, 463 S.W.2d 681 (1971), wherein the husband had been beating his wife and threatened to kill her. She placed a loaded pistol in her pocket while he was in the bathroom, then hoping to reason with him, she went to the bathroom and tried to talk with him. He held a razor in her face and again threatened to kill her, grabbed her, lowered the razor blade to within a fraction of an inch from her throat when she pulled the gun from her pocket and shot him. The Court upheld the ruling of the trial court holding that his death was accidental within the meaning of a group

life policy. Citing *Union Casualty v. Harroll*, 98 Tenn. 591, 40 S.W. 1080, the Court said:

"A voluntary act is an intentional one [sic], one which the actor of his own will, with the power of choice, determines to do or perform. So this condition is to be read as the equivalent of one exempting the insurer from liability where death results from an intentional exposure of one's self to unncessary danger. Both terms imply some degree of knowledge or apprehension of the danger incurred, and a purpose to take the risk. If the danger be concealed, and unknown to the party who ultimately suffers from it, then it cannot be said he has voluntarily exposed himself to it."

463 S.W.2d at 683, 684.

We do not find *Martin* to be inconsistent with *Distretti* because in *Martin* the agressor husband who was killed did not know that his wife was armed. Therefore, it could not be said that he voluntarily exposed himself to the hazard that resulted in his death.

A distinguishing fact which appears in the case at bar from the cases cited to this Court by appellants is that Mr. Tanner placed his wife's hand on his own hand which held the pistol. Why he did this can only be surmised, for only Mr. Tanner knew what his intent was at the time. However, we deem that it is reasonable for a person who does what he did to assume, under all the attending circumstances, that it was reasonably foreseeable that his wife would resist having the pistol pointed at her, would resist his efforts and that his death or injury might result therefrom. The proposition of law set forth in *Distretti*, which has come to be known as the Distretti rule, has thus far withstood the test of time.

We are mindful that this case is before us on summary judgment. However, all parties to this appeal take the position that summary judgment should be granted, the position of the appellants being, of course, that the trial court should be reversed and summary judgment entered for the plain-

tiffs. In order for appellants to prevail, it would be necessary for this Court to find that Mr. Tanner pulled a gun from beneath the car seat, pointed it at his wife, placed her hand upon his hand which held the gun, and did not reasonably foresee that, with her small children in the automobile, she would resist such actions and that he himself could be shot in the ensuing struggle. This we are not prepared to do pursuant to the record in this case. We further find that the pertinent policy provisions are not ambiguous. The judgment of the trial court granting summary judgment in favor of the defendants and denying summary judgment in favor of the plaintiffs is affirmed. The costs of this appeal are taxed one-half to appellant Helen Tanner Jones and one-half to appellant Sherry A. Tanner, for which execution may issue if necessary. This cause is remanded to the trial court for any further necessary proceedings.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.