IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

**FOR PUBLICATION**

**Filed:   September 3, 1996**

DANNY RAY HARRELL,        )
                                 )       KNOX CHANCERY
    Plaintiff-Appellant,     )
                                 )
                                 )      HON. H. DAVID CATE,
 Vs.                        )         CHANCELLOR
                                 )
THE MINNESOTA MUTUAL LIFE   )
INSURANCE COMPANY,       )
                                 )      NO.  03-S-01-9508-CH-00098
    Defendant-Appellee.     )

**For Appellant:**                 **For Appellee:**

Rufus W. Beamer, Jr.          Arthur G. Seymour, Jr.
Knoxville, Tennessee          Robert L. Kahn
                                FRANTZ, McCONNELL & SEYMOUR
                                Knoxville, Tennessee

# O P I N I O N

COURT OF APPEALS REVERSED;
REMANDED TO TRIAL COURT.               ANDERSON, J

We granted this appeal to determine whether we should retain "the Distretti Rule[1]" adopted by this Court sixty-seven years ago. The rule provides that before a death will be considered accidental under the terms of an insurance contract, the means, as well as the result, must be involuntary, unexpected, and unusual.

In this case, the Chancellor held that the plaintiff's death in an automobile collision was caused by her driving under the influence of an intoxicant, and it therefore was not "death by an accidental injury which was unintended, unexpected, and unforeseen" and, as a result, benefits were not payable on the insurance contract. The Court of Appeals, while noting that the rule had been criticized and rejected by a number of jurisdictions, nevertheless affirmed.

After careful consideration, we have determined that we should join the growing number of jurisdictions which have abandoned the distinction between "accidental means" and "accidental results." We do so because the distinction is contrary to the understanding and reasonable expectations of the average insurance policyholder and contrary to the plain meaning of the terms of the insurance contract. We also think there is a fundamental flaw in analyzing insurance contract terms under tort principles, such as foreseeability. We, therefore, overrule Distretti and its progeny, reverse the Court of Appeals, and remand this case to the trial court for entry of a judgment in favor of the plaintiff.

---

[1] Mutual Life Ins. Co. of New York v. Distretti, 159 Tenn. 138, 17 S.W.2d 11 (1929).

## BACKGROUND

On December 18, 1990, at approximately 9:30 p.m., Robin Denise Harrell died as a result of injuries she sustained in an automobile collision on Maynardville Highway, a four-lane road divided by a grass median in Knox County, Tennessee. The car Robin Harrell was driving crossed the grass median and struck two southbound cars. Tests performed on a blood sample taken after Harrell's death revealed a blood-alcohol level of .20 percent.[2]

At the time of her death, Robin Harrell and her husband, Danny Ray Harrell, the plaintiff in this appeal, were insured under a credit life policy issued by the defendant, The Minnesota Mutual Life Insurance Company (hereafter "Minnesota Life"). This policy provides for payment of the balance of the mortgage on the home owned by Robin and Danny Ray Harrell in the event either suffered death by "accidental injury." At the time of Robin Harrell's death, the mortgage balance was approximately $48,000. With regard to coverage for accidental death, the policy provided as follows:

> **What does death by accidental injury mean?**
>
> Death by accidental injury as used in this certificate means that your death results, directly and independently of all other causes, from an accidental drowning or from an accidental injury which was unintended, unexpected and unforeseen. . . .

Danny Ray Harrell filed a claim with Minnesota Life for payment under the policy, but Minnesota Life denied the claim. Harrell, thereafter, brought this action seeking to recover under the policy. For answer, Minnesota Life denied that Robin Harrell died from "an accidental injury which was unintended,

---

[2] That level is more than twice the .08 percent required to "create a presumption" that Harrell was "under the influence" of an intoxicant and her driving ability was impaired. Tenn. Code Ann. § 55-10-408(b)(1995 Supp.).

unexpected, and unforeseen." Instead, Minnesota Life argued that her death was the foreseeable consequence of driving an automobile under the influence of alcohol.

Following a bench trial, the Chancellor, relying upon a prior decision of this Court, Mutual Life Insurance Co. of New York v. Distretti, 159 Tenn. 138, 17 S.W.2d 11 (1929), and a long line of authority applying "the Distretti rule," dismissed the case, finding specifically that Robin Harrell's death did not result "directly and independently of all other causes . . . from an accidental injury which was unintended, unexpected, and unforeseen." Danny Harrell appealed, arguing that the Distretti rule should be modified or overturned. While noting that the rule has been criticized and rejected by a number of jurisdictions, the Court of Appeals affirmed the Chancellor, stating that "Tennessee remains committed to the rule that before a death will be considered accidental the **means as well as the result** must be involuntary, unexpected, and unusual." (Emphasis added.)

Thereafter, we granted the plaintiff permission to appeal to consider this important question of insurance law -- whether recovery under an accidental death insurance policy requires that the means causing death, as well as the resulting death, be involuntary, unexpected, and unusual.

## ACCIDENTAL DEATH

In this appeal, Danny Harrell urges this court to abandon the Distretti rule which differentiates between "accidental means" and "accidental results." Harrell argues that this Court should adopt a rule that would allow recovery if death is accidental in the common meaning of the word, regardless of the nature of the means which precipitated the accidental death, and asserts such a rule is

-4-

consistent with the plain understanding and objectively reasonable expectations of the average insured.

Minnesota Life responds that the longstanding rule established by this Court in Distretti, that death is not "accidental" if it is a foreseeable result of a voluntary act, should be reaffirmed, and that Robin Harrell's death was a foreseeable result of her driving an automobile under the influence of an intoxicant.

We begin our analysis of this issue with a review of the case law in this jurisdiction. The decisions of the lower courts in this case were based upon this Court's decision in Distretti interpreting accidental death. There, Distretti was robbed at gunpoint by bandits. As the bandits were fleeing, Distretti armed himself, ran outside the store, and opened fire on them. The bandits shot back, and Distretti was killed. His wife brought suit to recover under a life insurance policy which paid "upon receipt of due proof that such death resulted from bodily injury effected solely through external violent and **accidental means**." (Emphasis added.) The Distretti court denied recovery, concluding that Distretti's death was a foreseeable result of his voluntary act of chasing the bandits and shooting at them, and therefore, his death was not produced by "accidental means," for purposes of the insurance policy.

The distinction adopted by the Distretti court between death by "accidental means" and "accidental death" was explained succinctly by Professor Couch as follows:

> [A]ccidental death is an unintended and undesigned result arising from acts voluntarily done, whereas death by accidental means is a result arising from acts unintentionally done or events undesignedly

-5-

> occurring. The term 'accidental means' refers to the occurrence or happening which produces the result, rather than the result; it is concerned with the cause of the harm rather than the character of the harm.

10 Couch, Insurance 2d (Rev. ed.) § 41:29, pp. 44-45 (1982 & Supp. 1995) (footnotes omitted). Therefore, under the Distretti rule, a death that is caused by an insured's intentional act, or is a foreseeable consequence of an insured's voluntary act, is not considered "accidental." Though the distinction arose in the Distretti case and other cases where the specific term "accidental means" was used in insurance contracts, the distinction has been applied in cases, such as this one, where the term is not a part of the insurance contract. See, e.g., Spears v. Commercial Ins. Co. of Newark, N.J., 866 S.W.2d 544 (Tenn. App. 1993). The Distretti rule has never been overruled and has been approved and applied in various contexts in later Tennessee cases. See, e.g., Seeley v. Pilot Fire & Cas. Co., 432 S.W.2d 58 (Tenn. 1968); Baker v. National Life & Acc. Ins. Co., 201 Tenn. 247, 298 S.W.2d 715 (1956); Jones v. Fireman's Fund American Life Ins. Co., 731 S.W.2d 532 (Tenn. App. 1986); Nicholas v. Provident Life and Acc. Ins. Co., 61 Tenn. App. 633, 457 S.W.2d 536 (1970). Indeed, the distinction between "accidental means" and "accidental results" has been applied in Tennessee in a case similar to the Harrell case to deny recovery under an accidental death policy for an insured party who had been killed in a one car accident while intoxicated. Hobbs v. Provident Life & Acc. Ins. Co., 535 S.W.2d 864 (Tenn. App. 1975). The Hobbs court concluded that "the danger of injury or death as result of operating a motor vehicle while intoxicated is a foreseeable one and the appellate courts of this State have repeatedly held that death is not caused by accidental means, within the meaning of an insurance policy if it is a foreseeable result of a voluntary and unnecessary act or course of conduct of the insured." Id., 535 S.W.2d at 866.

-6-

While Tennessee has remained committed to the distinction between "accidental means" and "accidental death," commentators and many other courts have criticized the distinction as illusory and contrary to the normal expectations of the average policy holder.

The rejection of the distinction between "accidental means" and "accidental results" was first articulated by Justice Cardozo more than sixty years ago in dissent in Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 54 S. Ct. 461, 463, 78 L. Ed. 934 (1934). There, the insured died after suffering sunstroke. The majority said that since the insured voluntarily exposed himself to the sun and there were no unforeseen intervening causes, the death was not caused by accidental means. Id., 291 U.S. at 496, 54 S. Ct. at 462. Justice Cardozo strongly disagreed:

> The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident. . . . On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. . . . When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. . . . If there was no accident in the means, there was none in the result, for the two are inseparable. . . . There was an accident throughout, or there was no accident at all.

Id., 291 U.S. at 499, 54 S. Ct at 463 (Cardozo, J., dissenting). Justice Cardozo's views in dissent have now gained the support of the great majority of jurisdictions.

Professor Appleman also illustrates the fallacy of the distinction as follows:

> Almost every action we take has some element of design; if we drive an automobile upon the highway, where another collided with us, could this not have been foreseeable, or at least within the realm of potential so far as the "means" were concerned? Every instance where a person walks, or jumps, and slips or falls, comes within a like category. To permit a rigid construction of such expressions is to permit a deception to be practiced upon the public. . . .

1A Appleman, Insurance Law & Practice, § 363 at p. 492 (1981 & Supp. 1995).

Although a few courts in other jurisdictions still cling to the distinction,[3] most courts have either abolished the distinction or refused to recognize it in the first place when considering whether a particular death or injury is accidental.[4] Under the more recent cases, the unexpected consequences of an individual's voluntary behavior provide the accidental element for purposes of an insurance policy. Carroll v. CUNA Mut. Ins. Soc., 894 P.2d at 751.

---

[3] See, e.g., Weil v. Federal Kemper Life Assur. Co., 866 P.2d 774 (Cal. 1994)(In Bank); Smith v. Continental Cas. Co., 203 A.2d 168 (D.C. App. 1964); Evans v. Metropolitan Life Ins. Co., 174 P.2d 961 (Wash. 1946).

[4] INA Life Ins. Co. v. Brundin, 533 P.2d 236 (Alaska 1975); Knight v. Metropolitan Life Ins. Co., 437 P.2d 416, 420 (Ariz. 1986); Carroll v. CUNA Mut. Ins. Soc., 894 P.2d 746 (Colo. 1995); Gulf Life Ins. Co. v. Nash, 97 So. 2d 4, 10 (Fla. 1957); Dawson v. Bankers' Life Co., 247 N.W. 279, 282 (Iowa 1933); Fryman for Fryman v. Pilot Life Ins. Co., 704 S.W.2d 205, 206 (Ky. 1986); Schonberg v. New York Life Ins. Co., 104 So. 2d 171 (La. 1958); Collins v. Nationwide Life Ins. Co., 294 N.W.2d 194, 196 (Mich. 1980); Taylor v. New York Life Ins. Co. 222 N.W. 912 (Minn. 1929); Murphy v. Travelers Ins. Co., 2 N.W.2d 576, 580 (Neb. 1942); Catania v. State Farm Life Ins. Co., 598 P.2d 631, 633 (Nev. 1979); Scott v. New Empire Ins. Co., 400 P.2d 953, 955 (N.M. 1965); Burr v. Commercial Travelers Mut. Acc. Ass'n, 67 N.E.2d 248, 252 (N.Y. 1946); Cooper v. New York Life Ins. Co., 180 P.2d 654 (Okla. 1947); Botts v. Hartford Acc. & Indem. Co., 585 P.2d 657, 660 (Or. 1978); Beckham v. Travelers Ins. Co., 225 A.2d 532, 534 (Pa. 1967); West v. Commercial Ins. Co. of Newark, N.J., 528 A.2d 339 (R.I. 1987); Republic Nat. Life Ins. Co. v. Heyward, 536 S.W.2d 549, 557 (Tex. 1976); Carter v. Standard Acc. Ins. Co., 238 P. 259, 275 (Utah 1925); Wiger v. Mut. Life Ins. Co. of New York, 236 N.W. 534, 538 (Wis. 1931); Wickman v. Northwestern Nat. Ins. Co., 908 F.2d 1077 (1st Cir. 1990); Whitaker v. State Farm Mut. Auto Ins. Co, 768 P.2d 320 (Kan. App. 1989); Consumers Life Ins. Co. v. Smith, 587 A.2d 1119, 1124-25 (Md. App. 1991); see also John D. Ingram and Lynne R. Ostfeld, The Distinction Between Accidental Means and Accidental Results in Accidental Death Insurance, 12 Fla. St. U. L. Rev. 1, 9 (1984); 1A Appleman, Insurance Law and Practice, § 360, pp. 475-76.

A good example of the persuasive analysis used in such cases is provided by the Texas Supreme Court, which abandoned the distinction between "accidental means" and "accidental results," reasoning as follows:

> Texas courts have waded through Justice Cardozo's Serbonian bog, and we are now convinced that the terms 'accidental death' and 'death by accidental means' as those terms are used in insurance policies, must be regarded as legally synonymous unless there is a definition in the insurance contract itself which requires a different construction. These terms in an insurance contract should be given their ordinary and popular meaning according to the understanding of the average man; the court's guide should not be the technical meaning of the words used, but rather the intention of the parties as inferred from the contract as a whole. **A fine distinction between means and results would never occur to an average policyholder, and the insurer should not be able to escape liability by resort to such a technical definition. If the insurer wishes to distinguish between accidental results and injuries caused by accidental means, he should do so expressly, so as to give the policyholder clear notice of any limitations of liability which the insurer wishes to impose by use of the latter term.**

Republic Nat. Life Ins. Co. v. Heyward, 536 S.W.2d at 557 (emphasis added). Like the Texas Supreme Court, almost every court rejecting or abandoning the distinction has found the distinction contrary to both the plain meaning of the terms and the understanding and reasonable expectations of the average policyholder. See, e.g., Carroll v. CUNA Mut. Ins. Soc., 894 P.2d at 753; Buck v. Gulf Life Ins. Co., 548 So. 2d at 718. In addition, many courts have concluded that the distinction itself arises from an inappropriate importation of the tort concept of foreseeability into private insurance contracts.

For example, the Michigan Supreme Court, in Collins v. Nationwide Life Ins., explained that "neither the level of foreseeability requisite for tort liability nor for criminal recklessness is sufficient to render a mishap a 'nonaccident' when conduct is measured against the terms of an accidental death insurance policy."

Id., 294 N.W.2d at 196.  In a similar fashion, the Kentucky Supreme Court observed that the "fundamental flaw" with the distinction between accidental means and accidental results is "that it subjects contract terms to analysis under tort principles, such as fault and foreseeability."  Fryman v. Pilot Life Ins. Co., 704 S.W.2d at 206.  In rejecting the distinction, the Kentucky Court said "we are reluctant to analyze contract terms under principles which have technical meaning in other areas of the law."  Id.

After careful consideration and a thorough review of the cases on the subject, we are persuaded that the better reasoned, more logical approach is to abandon the distinction between "accidental means" and "accidental results."  Tennessee, therefore, joins the growing number of jurisdictions which have emerged from the "Serbonian bog."

The analysis used in construing insurance contracts is well settled.  Like other contracts, insurance contracts should be construed so as to give effect to the intention and express language of the parties.  Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993).  Words in an insurance policy are given their common and ordinary meaning, with ambiguous language construed against the insurance company and in favor of the insured.  Id.  The distinction we had adopted in Distretti is contrary to those now familiar rules of construction.  In our view, an insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy.  Policy language should be given its plain meaning, unless a technical meaning is clearly provided in the insurance policy.  Elsner v. Walker, 879 S.W.2d 852 (Tenn. App. 1994).  As the Texas Supreme Court recognized, it is inconceivable that the average insured would understand the fine distinction between "accidental means" and "accidental results."

In addition, we agree that the importation of the tort principle of foreseeability into the interpretation of a private insurance contract is inappropriate. As Justice Mosk observed in dissent in Weil v. Federal Kemper Life Assur. Co., "[t]he insurance company does not represent the public safety concerns of society but the commercial interest of its owners. Nor was the company forced to issue the policy; it voluntarily did so for the purpose of profiting from the transaction." Id., 866 P.2d at 806. Insurance companies draft the policies they sell and are, therefore, free to exclude injury or death that results from reckless and foolhardy acts. With simplicity and clarity of expression they may remove all doubt. Knight v. Metropolitan Life Ins. Co., 437 P.2d at 420.

Accordingly, Distretti, its progenitors and progeny are overruled. From this day forward, in Tennessee law there is no distinction between "accidental death" and death by "accidental means" in determining coverage under an insurance policy. Instead, if death is the unanticipated and unexpected result of an intentional, voluntary act, it is accidental in the ordinary and plain sense of the word and recovery is available under an accidental death insurance policy. Accidental deaths or injuries which are included within this definition, but which the insurance company does not intend be covered, can be specifically excluded in the insurance policy.

Where, as here, the insured died as the result of an intentional act, such as voluntary intoxication, but did not intend or expect death to result, such death is accidental for the purposes of an accidental death policy. Accordingly, we conclude that Robin Harrell's death resulted from an "accidental injury which was unintended, unexpected and unforeseen."

## CONCLUSION

Because we conclude that the distinction between "accidental means" and "accidental results" is illusory, for the reasons previously articulated, we abandon the distinction. Accordingly, the Court of Appeals' judgment is reversed, and the cause is remanded to the trial court for entry of judgment in favor of the plaintiff, Danny Ray Harrell. Costs of this appeal are taxed to the defendant, The Minnesota Life Insurance Company, for which execution may issue if necessary.

_____
RILEY ANDERSON, JUSTICE

**CONCUR:**

Birch, C.J.
Drowota, Reid, and White, JJ.