**IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE**

FILED

March 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| MARY F. HORTON, | ) | HAWKINS CIRCUIT |
| | ) | |
| Plaintiff/Appellee | ) | No. 03A01-9809-CV-00287 |
| | ) | |
| v. | ) | KINDALL T. LAWSON, |
| | ) | JUDGE |
| MOUNTAIN LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | REVERSED and |
| Defendant/Appellant | ) | REMANDED |

Lewis S. Howard, Jr., Knoxville, for Appellant.

Phillip L. Boyd, Rogersville, for Appellee.

## O P I N I O N

INMAN, Senior Judge

This is the second appeal of this case. The beneficiary of a policy of life insurance issued by the defendant filed the action to recover the proceeds. Following the close of the plaintiff's case, the trial judge directed a verdict for the defendant upon a finding that the death of the insured was not within the coverage provided.

On appeal, we reversed and remanded the case for trial, holding that reasonable minds could differ as to whether the insured's death was unanticipated and the unexpected result of an intentional, voluntary act in light of the decision of the Supreme Court in *Harrell v. Minnesota Mut. Life Ins. Co.,* 937 S.W.2d 809 (Tenn. 1996).

Upon remand, and relying upon the affidavit of Dr. Cleland Blake, a forensic pathologist, the trial judge granted summary judgment for the plaintiff,

finding that the insured's death was accidental within the meaning of the policy and that the plaintiff was entitled to judgment as a matter of law.

The issue is whether summary judgment was properly granted. Where there is no conflict in the evidence as to any material fact, the question on appeal is one of law, and the scope of review is *de novo* with no presumption of correctness. T. R. A. P. Rule 13(d). *Gardner v. Ins. P. & Cas. Co.,* 956 S.W.2d 1 (Tenn. App. 1997).

## FACTS

Michael Horton and Patricia Lawson shared a trailer. On November 10, 1992, he was shot, but not killed, by his paramour following an argument which had commenced the preceding night. The shooting, by a shotgun, took place outside the trailer. Horton, apparently enraged, ran towards the shooter, Ms. Lawson, and attacked her. Both of them fell to the ground, arguing and fighting. Thereupon, Matthew Lawson, the younger son of Patricia Lawson, came out of the trailer with a shotgun which he placed against the back of Michael Horton's head and killed him,[1] after shouting "stop beating my mother!"

Since the insured was shot twice by different people, the District Attorney employed Dr. Cleland Blake, a forensic pathologist, to review an autopsy and determine the firing pattern of each shotgun, and to review certain documents and affidavits for the purpose of rendering an opinion as to whether the insured's death was accidental.

Dr. Blake opined that the death of Horton was accidental in that it could not have been anticipated "because he could not have seen the direction from

---

[1]The appellee, in brief, says that "Michael Horton never saw the shot coming, did not know the young son was present or that there was a shotgun in his hand." How she knew the thoughts of Michael Horton, who was killed, does not appear.

which the weapon was fired." He opined that Horton's death was caused by the shotgun blast administered by his paramour's son.

Dr. Blake rested his opinion, in part, upon the affidavit of Patricia Lawson who deposed that she and Horton had argued heatedly the night before the shooting, and that the discord continued the following morning. After Horton left the trailer she "picked up" a .12 gauge shotgun which was kept for protection from dogs and walked to the door of the trailer. When Horton was about 30 feet distant, he yelled at her and she pointed the shotgun at him and pulled the trigger. At this point Horton was about 90 feet away.

She deposed that she then dropped the shotgun and began to run. Before reaching the trailer Horton caught her and they fell to the ground. Her son, Matthew, had a .410 gauge shotgun in the trailer. She deposed that he "grabbed the .410 gauge shotgun," stepped from behind the door, placed the gun to the back of the head of Michael Horton and killed him instantly. She further deposed that Michael Horton was on the ground with his back to the door when the young son stood with the shotgun, and that he did not know the young son was present or that he had a shotgun in his hands, could not see the young man and had no way of knowing that the young man would put the gun to the back of his head and pull the trigger.

## LAW

The distinction between 'accidental death' and 'accidental means' has been abolished in Tennessee by the case of *Howell v. Minnesota Life Ins. Co.,* 937 S.W.2d 809 (Tenn. 1996). The controlling legal principle is "if death is the unanticipated and unexpected result of an intentional, voluntary act, it is

3

accidental in the ordinary and plain sense of the word and recovery is available under an accidental death insurance policy." *Howell.*

The appellant argues that Patricia Lawson's affidavit is unreliable because she could not possibly have known what Michael Horton knew or did not know at the time of his death; and further, that the affidavit of Dr. Blake is tainted because he based his opinion concerning accidental death, in part, on the unreliable affidavit of Lawson. In this connection, we note that the trial judge's comment "[h]er affidavit is in conflict with another statement she made. So, there is a controversy as to that."

A trial court must disallow testimony in the form of opinion or inference when the underlying facts or data indicate a lack of trustworthiness. *McDaniel v. CSX Transportation, Inc.,* 955 S.W.2d 257 (Tenn. 1997). It is apparent that the affidavit of Patricia Lawson contradicts her testimony given in the Criminal Court that she remembered few of the details, and is thus unreliable. Thus, in its present posture, this case presents the affidavit of an expert, some of whose opinions are based on the facially contradictory, and hence unreliable, testimony of Patricia Lawson. At this juncture in the proceedings, those opinions - based as they are on facially contradictory testimony - are inadmissible and cannot be considered by us on summary judgment. *See Byrd v. Hall,* 847 S.W.2d 208, 215-16 (Tenn. 1993). Furthermore, to the extent that Dr. Blake, a pathologist, attempts to state a legal opinion, he lacks the necessary qualifictions to do so. *See McCall v. Wilder,* 913 S.W.2d 150 (Tenn. 1995). We are left with Dr. Blake's opinions as a pathologist regarding the results of the autopsy. This simply establishes that the decedent was shot in the head

4

from behind, an undisputed material fact, but certainly not one that, standing alone, is sufficient to warrant summary judgment in this case.

The trial judge commented that "the data [Dr. Blake] relies on are disputed and may not be reliable. Therefore, I have a problem with his determination that the death was accidental." We agree.

This case is not an appropriate one for summary judgment, because the facts and conclusions to be drawn therefrom do not permit a reasonable person to reach only one conclusion. *See, Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995); *Byrd v. Hall, supra.* It was the burden of the plaintiff to support her motion, because a party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *Byrd.*

As winnowed, the undisputed evidence shows only that the insured died from a shotgun blast to the back of his head, which does not justify a summary judgment.

The judgment is reversed and the case is remanded for a trial on the merits.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Charles D. Susano, Jr., Judge