IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2008 Session

JIMMY KYLE, ET AL. v. J.A. FULMER TRUST

Direct Appeal from the Chancery Court for Shelby County
No. CH-01-1921-1    Walter L. Evans, Chancellor

No. W2008-00220-COA-R3-CV - Filed December 9, 2008

This appeal concerns a purchase option in a lease of a tract of land in Shelby County, Tennessee. Executed in 1950, the lease had an initial term of 50 years and six months. In 1953, the Lessee exercised its option to renew, allowing possession for an additional 50 years through 2050. In 2001, the Lessee attempted to exercise its option to purchase the leased property. Lessor then sought a declaratory judgment determining the validity of the purchase option, and if valid, the value to be paid for the Lessor's interest in the property. The trial court found that the Lessee properly exercised the purchase option and that the value of the Lessor's interest should be based upon the property as unencumbered by the remaining 50-year lease term. We affirm the trial court's finding regarding the purchase option, but reverse its determination of the value of the Lessor's interest in the property. Affirmed in part, reversed in part and remanded.

Tenn. R. App. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,
Reversed in Part and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

John McQuiston, II, Memphis, TN, for Appellant

John S. Golwen, Memphis, TN, for Appellee
William G. Whitman, Memphis, TN, for Appellee

OPINION

Facts and Procedural History

This dispute arises from a lease of land in Shelby County, Tennessee entered into on July 1, 1950. Jack Talley was the initial lessor; J.A. Fulmer, Jr. and J.A. Fulmer Sr. were the lessees. The Appellants/Lessees and the Appellees/Lessors are the successors in interest to the original parties.

As tenant, Mr. Fulmer planned to develop the land by constructing buildings and finding subtenants. In the intervening years, a number of subtenants have also constructed buildings and conducted business on the property.

The initial term of the lease was 50 years and six months. Because Mr. Talley wished to avoid additional income taxes, the rent was modest: $50 per month for the first six months; then $100 per month for 25 years; and $150 per month for the final 25 years. Under the lease, the Lessees were required to pay all taxes on the property. The lease also provided the Lessees an option to renew the lease for a second 50-year term. The rent for the second 50-year term is $150 per month or $1800 per year. The Lessees exercised this option on August 31, 1953, creating an additional lease term from January 1, 2001 through December 31, 2050. Finally, the lease sets forth an option for the Lessees to purchase the property. On February 18, 2000, the Lessees informed the Lessors that they were exercising the option to purchase.

The dispute in this case arises from differences in the interpretation of the lease provisions providing the option to renew and the option to purchase. These provisions are set forth below:

> 28. The Lessees shall have the option of remaining in possession of said demised premises for a further period of fifty years (50) after the expiration of this lease, under the same terms and conditions thereof, at the same rental last paid of $1800 per annum, to be paid in monthly installments of $150, in advance, but if the Lessees desire to exercise this option, they shall give the Lessor a six months advance written notice of their intention to renew this lease, but said written notice must be given to Lessor at least six months before the expiration of the term.

> 29. At the end of the term of fifty (50) years and six months from the date hereof, the Lessees may at their option purchase said demised premises for a consideration to be agreed upon with the Lessees. Should the Lessor and the Lessees fail to agree upon such consideration, the Lessor and the Lessees shall each name one arbiter who shall in turn choose one umpire; the three thus named shall act with promptness; the decision of any two as to a proper consideration for the purchase of said demised premises shall be binding upon all the parties hereto; but if the Lessees desire to exercise this option, they shall give the Lessor a six months advance written notice of their intention to purchase the demised property, but said written notice must be given to Lessor at least six months before the expiration of the term.

On September 18, 2001, Lessors commenced an action for declaratory judgment in the Chancery Court of Shelby County. The Complaint asked the court to declare the purchase option invalid. In the event that the Lessee had validly exercised the purchase option, the Lessor argued that Lessee should not be entitled to purchase the property based upon the property's value as encumbered by the remaining lease term. Instead, Lessor asserted that the consideration for the property should be the fair market value of the property unencumbered by the lease. In response,

Lessee also sought a declaratory judgment asking the court to declare the rights and obligations of the parties under the lease. Both parties subsequently moved for summary judgment.

As the matter progressed, two of the subtenants on the property, Regions Bank and Six Continents Hotels, Inc., intervened. In July 2006, the court entered a Consent Order providing that, regardless of the outcome of the litigation, the subleases of both intervenors would remain valid and enforceable through 2050. The Order did not address the rights of the non-intervening subtenants. [1]

While the summary judgment motions were pending, the court, on May 26, 2006, entered a second Consent Order referring the matter to Allen Blair to act as Special Master. The Court asked the Special Master to make a report and recommendation on two questions:

> 1. Whether [Lessee], having previously exercised its option pursuant to Paragraph 28 of the [Lease] entered into by the parties on July 1, 1950, also has the right to exercise the option to purchase set forth in Paragraph 29 of the Lease?

> 2. If the Special Master determines that [Lessee] still has an option to purchase in addition to its prior exercise of its option to extend the Lease, should the determination of the consideration for the property be as encumbered by the additional 50 year term or as unencumbered by the 50 year extension of the lease term.

While serving as Special Master, Mr. Blair also acted as mediator between the parties in an attempt to reach a settlement. The mediation was unsuccessful.

On August 17, 2007, the Special Master filed his Report and Recommendation with the court. After a thorough analysis, the Report answered the two questions:

> 1. The [Lessee], having previously exercised its option pursuant to paragraph 28 of the [Lease] entered into by the parties on July 1, 1950, had the right to exercise the option to purchase set forth in paragraph 29 of the Lease.

> 2. Having determined that the [Lessee] still had an option to purchase in addition to its prior exercise of its option to extend the Lease, the determination of the consideration for the property should be based upon the property as encumbered by the additional 50-year term.

Pursuant to Tenn. R. Civ. P. 53.04(2), the Lessor objected to the Special Master's Report.

After yet another round of briefs and a hearing, the trial court entered its Order and Final

---

[1] In its brief on appeal, Lessor attempts to stipulate that this consent order applies to all of he Lessees' subleases, not just the two intervenors. Lessee disputes the validity of this proposed stipulation.

Judgment on January 10, 2008. The Order partially adopts and partially rejects the Special Master's recommendations:

> 1. The court adopts the Report and Recommendation of the Special Master on the issue of whether the Defendant may exercise its right to purchase the property. Accordingly, the Court finds that the Defendant, having previously exercised in 1953 its option to extend the lease term pursuant to paragraph 28 of the Indenture of Lease, had the right to exercise the option to purchase set forth in paragraph 29 of the Lease and did in fact exercise the option to purchase the property.
>
> 2. The Court rejects the Special Master's finding that the consideration for purchase by Defendant of the subject property should be based upon the property as encumbered by the additional 50-year term. The Court modifies the Report and Recommendation of the Special Master and finds that the consideration for the property should be based upon the property as unencumbered by the additional 50-year lease extension rather than encumbered by the additional 50-year lease term.

The Court concluded that these findings disposed of any pending matter in the litigation, including the motions for summary judgment.

Lessee filed its Notice of Appeal on January 22, 2008.[2] In its brief, Lessee presents a variety of interrelated issues. For clarity, we restate these issues slightly: whether the trial court erred by ruling that the property should be valued as if it were not encumbered by a lease running until 2050 at an agreed low rent. Lessor asks the Court to uphold the trial court's ruling, and alternatively, presents two additional issues, as stated in its brief:

> 1. Whether the option-to-purchase clause within the lease agreement is too vague with respect to price, rendering it unenforceable?
>
> 2. Whether the Lessee can both exercise the option to extend the lease and exercise the option to purchase the Property?

### Standard of Review

The issues presented require the interpretation of a lease. It is well settled law that "[t]he interpretation of a written agreement is a matter of law." *Wills & Wills, L.P. v. Gill*, 54 S.W.3d 283, 285 (Tenn. Ct. App. 2001)*; Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Our review of questions of law is *de novo*. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001). Therefore, we must review the written agreement *de novo* to determine its meaning. *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983).

---

[2] Tenn. Code Ann. § 29-14-112 permits appellate review of judgments in actions for declaratory judgment like any other order or judgment.

Lessor, however, argues that we should apply the demanding "abuse of discretion" standard of review. Lessor contends that the trial court, rather than simply interpreting the terms of the Lease, based its ruling on what was equitable under the circumstances. In *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41 (Tenn. 1986), the Court held that, when a trial court applies the equitable doctrine of laches, a reviewing court will not reverse absent an abuse of discretion. *Id.* at 46. Because the trial court was exercising similar equitable discretion, Lessor argues that we can only overturn its decision if that discretion was abused. We disagree.

Lessor presents no evidence that the trial court acted for equitable reasons. The trial court's final Order simply reveals its interpretation of the lease; it does not provide an equitable, or even legal, rationale for that interpretation. Furthermore, Lessor's reliance on *Saad & Sons* is misplaced. In that decision, the Court dealt solely with the doctrine of laches. Neither party in this case contends that the doctrine of laches is applicable here. If we were to follow Lessor's argument and expand the rule of *Saad & Sons*, we would commit to the trial court's discretion virtually every question involving fairness. Such a result would preclude meaningful appellate review of a host of legal issues.

Therefore, we will follow the traditional standard of review. This case involves the interpretation of a lease—a question of law. Our review is *de novo*.

**Law and Analysis**

Before we can discuss the issue of encumbrance, we must address Lessor's two challenges to the purchase option itself. Clearly, the option must be valid for the Lessee to exercise it. First, Lessor asserts that Lessee forfeited the right to exercise the purchase option when Lessee exercised the option to renew. Next, Lessor contends that the purchase option is an unenforceable "agreement to agree." We address each issue in turn.

The first question requires an interpretation of the Lease. Specifically, what effect, if any, does paragraph 28 of the Lease (option to renew) have on paragraph 29 (option to purchase)? Tennessee case law does not provide specific guidance on this question. Accordingly, we must rely on the general rules of contract interpretation.

When interpreting a contract, the court's aim is to ascertain and give effect to the parties' intent. *Harrell v. Minnesota Mut. Life Ins.*, 937 S.W.2d 809, 814 (Tenn.1996). Each provision must be construed in light of the entire agreement, and the language in each provision must be given its natural and ordinary meaning. *Buettner v. Buettner*, 183 S.W.3d 354, 359 (Tenn. Ct. App.2005). If the language is ambiguous, however, courts cannot enforce the contract according to its plain meaning. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). A provision is not ambiguous simply because the parties interpret it differently. *Staubach Retail Servs. Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005); *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than

one." ***Farmers-Peoples Bank v. Clemmer***, 519 S.W.2d 801, 805 (Tenn.1975).

When viewed separately, the two provisions are clear: paragraph 28 grants an option to renew, and paragraph 29 an option to purchase. Lessor argues that either one or the other may be exercised, but not both. Lessor points out that the Lease itself does not explicitly provide for the Lessee to exercise both options. Paragraph 29 provides for the purchase of the property "at the end of the term of fifty (50) years and six months." When Lessee exercised the option to extend, Lessor argues that the lease term effectively became 100 years and six months. Therefore, Lessor contends, Lessee could not exercise the purchase option because the lease term had not ended.

We disagree with Lessor's reading of the two provisions. Lessor is correct that the Lease, by its plain terms, does not explicitly allow the Lessee to exercise both options. The Lease, however, does not explicitly recognize an either/or relationship between the provisions. Critically, the lease does not prohibit the Lessee from exercising both options.

Similarly, we disagree with the Lessor's characterization of the timing requirements in the Lease. The only apparent precondition for the exercise of both options is notice. Paragraph 28 provides that notice must be given at least six months before the end of the term. The term ended in 2000. Lessee was free to give notice any time at least six months prior to the term's end, and Lessee did so in 1953. The purchase option in Paragraph 29 contains the same notice requirement. Accordingly, the purchase option is conditioned only upon notice; it is not conditioned upon Lessee's failure to exercise the option to renew.

Lessor's argument that the lease term, after Lessee exercised the option to renew, became 100 years and six months is also unpersuasive. Paragraph 28 specifically allows the Lessee to remain in possession of the property for 50 years after the expiration of the initial lease term. The option to "renew" means that the end of the 50 year and six month term marks the beginning of a second 50 year term. It does not create a single 100 year and six month lease term. Therefore, contrary to Lessor's assertion, the initial lease term ended in 2000. By giving notice more than six months prior to the end of that initial term, Lessee fulfilled the requirement necessary to exercise the option.

Lessor next contends that the purchase option is unenforceable because the lease is too vague with respect to a material term—price. The option, Lessor argues, creates nothing more than an "agreement to agree." Such agreements are unenforceable under Tennessee law. ***Four Eights, LLC v. Salem***, 194 S.W.3d 484, 487 (Tenn. Ct. App. 2005).

For a contract to be enforceable, the parties must agree on the material terms. ***Gurley v. King***, 183 S.W.3d 30, 35 (Tenn. Ct. App. 2005). Courts are reluctant to enforce contracts that leave material terms open for further negotiations. ***Four Eights***, 194 S.W.3d at 487. Tennessee courts, however, do "not favor the destruction of contracts because of indefiniteness and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced." ***Id***. at 487. Accordingly, "where price is the unspecified material term, courts have enforced contracts that call for the price to be set by vague but ascertainable standards, such as 'market price' or 'prevailing

rate.'" ***Huber v. Calloway***, No. M2005-00897-COA-R3-CV, 2007 WL 2089753, at *5 (Tenn. Ct. App. Jul. 12, 2007).

To support its argument, Lessor relies on two recent decisions of this Court. In the first, ***Four Eights***, the lease provided the lessee an option to purchase at fair market value. Under the lease, "fair market value" would be "determined by the Lessor and Lessee, negotiating in good faith, within thirty (30) days of Lessee [sic] notice to Lessor of the election to purchase the Premises." 194 S.W.3d at 485 n. 1. Because the fair market value would be determined by the parties solely through good faith negotiations, the purchase option was simply an "agreement to agree." ***Id***. at 486. Therefore, the purchase option was unenforceable. ***Id***. at 488.

Likewise, in ***Huber***, the court found a purchase option unenforceable because it was too vague with respect to price. The agreement at issue contained the following purchase option provision:

> In lieu of attaching purchase agreement, Buyer and Seller agree to complete an agreement at time of notice to sell. Purchase price to be ***mutually agreed upon based on independent [sic] appraisal*** at time of notice to sell.

***Id***. at *1 (emphasis added). The Court found that the "language mandating an appraisal does nothing to change the requirement of mutual agreement." ***Id***. at *5. Despite the independent appraisal, the parties in ***Huber*** were required to reach an independent agreement on price. Accordingly, the purchase option was a "classic example of the 'agreement to agree,'" and therefore, unenforceable. ***Id***.

Lessor's reliance on ***Four Eights*** and ***Huber*** is misplaced. In those two cases, the options were unenforceable because they were conditioned on the parties negotiating to reach an independent agreement. Here, the lease first calls for the parties to negotiate. If negotiation fails, however, the lease requires that the price be determined by a group of two arbiters and one umpire, with the decision of any two binding on the parties. Therefore, while the lease does not set a specific purchase price, it does provide a specific method of determining the price. This method—the panel of arbiters—does not call for independent negotiations between the parties. Our conclusion on this issue is supported by the decision in ***William P. Rae Co. v. Courtney***, 165 N.E. 289 (N.Y. 1929). In ***Courtney***, the court enforced a purchase option providing for a nearly identical method of determining price.

Therefore, we conclude that the purchase option was both enforceable and validly exercised by the Lessee. Accordingly, we affirm the trial court's judgment on this issue.

Having found that the Lessee properly exercised a valid purchase option, we turn to the final issue: whether the consideration to be paid should be based upon the value of the property as unencumbered by the lease. The difference in value is not trivial; the appraised value of the property is $125,000 if encumbered by the lease and $1,758,626 if unencumbered.

Neither Tennessee law nor the lease itself provides clear guidance on this particular issue. Accordingly, we look to decisions from other jurisdictions that address the question. In **William P. Rae Co. v. Courtney**, 165 N.E. 289 (N.Y. Ct. App. 1929), a New York court examined a lease containing a similar purchase option:

> At any time subsequent to five years from the date hereof, the Tenant or his assigns, may at his option purchase said premises for a consideration to be agreed upon with the Landlords. Should the parties hereto, in such a case, fail to agree upon such consideration, the Landlords and Tenants shall each name one arbiter who shall in turn choose one umpire; the three thus named shall act with promptness; the decision of any two as to a proper consideration for the purchase of said premises shall be binding upon all the parties hereto.

*Id*. at 290. The tenant accepted the option to purchase while the burden of the lease still had sixteen years to run. *Id*. The issue presented was whether the remaining burden of the lease should be deducted from the value of the lessor's interest. The court found that the encumbrance should be deducted from the market value of the property:

> The [tenant] had a valuable interest in the premises which it could have sold and transferred. If the lessors had desired to sell the premises subject to the lease, they would have been obliged to deduct from the market value of the property the amount of the incumbrance of the lease.

*Id*. at 290; see also, **Petula Assocs. v. Dolco Packaging Corp.**, 240 F.3d 499 (5th Cir. 2001) (holding that appraisers are to take into account the positive or negative impact of the existing lease held by the optionee tenant in determining such value unless the language of the lease expressly precludes such consideration); **TCC Enterprises v. Estate of Erny**, 717 P.2d 936, 937 (Ariz. Ct. App. 1986) (holding that the "[Landlord's] estate is not now in a position to sell unencumbered fee simple to the subject property, for it does not own such a fee. The estate they now hold and could sell is a 'leased-fee estate.'"); **Napleton v. Ray Buick, Inc.**, 704 N.E.2d 864, 871 (Ill. Ct. App. 1999) (holding that the term used in the option clause, "demised premises," indicates that the value of the property should be encumbered by the lease); Milton R. Friedman, Friedman on Leases § 15.1 (4th ed. 1997) (recognizing that when a lessee exercises a purchase option, "[t]he lease itself may be a burden on the property and depress its value.")

Lessor argues that we should adopt a different rule developed in a line of recent decisions by the Florida courts. After a series of conflicting cases, the Florida Supreme Court developed its current rule in **Taylor v. Fusco Management Co.**, 593 So.2d 1045 (Fla. 1992). In **Taylor**, the Court held that, in the absence of specific language to the contrary in the Lease, the market value of leased property at the time a Lessee exercises an option to purchase the property should be computed as if the property were unencumbered by the Lease. Any intent to value the property otherwise should be clearly stated in the Lease. *Id*. at 1047; but see, Friedman, *supra,* § 15.1 n. 11 (stating that the interpretations of the Florida courts merit "opprobrium").

We decline to adopt the rule developed in Florida, and instead, find that the property should be valued as encumbered by the lease. In reaching this conclusion, we base our analysis, as the Special Master did, on the fair market value of the property. The Lease, however, does not specify the test to be applied to determine consideration. Because the Lease does not explicitly contemplate a test, Lessor contends that we are precluded from performing a fair market value analysis. Lessor's Complaint, however, specifically asked the trial court to declare the following:

> [T]he attempted exercise of the "option to purchase" by the [Lessees] requires a good faith determination of the fair market value of the [property] unencumbered by the [Lessees'] leasehold interest….

Accordingly, the measure for the consideration to be paid for the property is its fair market value.

Under Tennessee law, "[t]he fair market value of the land is the price that a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell." *Nashville Housing Authority v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976) (citing *Davidson County Board of Education v. First American National Bank*, 301 S.W.2d 905 (Tenn. 1957)). Here, the property is encumbered by a 50-year lease with low rent. A purchaser would have to endure the lease and its low rent for more than 40 years before acquiring a fee simple estate. If we were to accept Lessor's argument, we would allow the Lessors to sell more than they own. Lessors own an estate encumbered by a long term lease, but they wish to sell an unencumbered fee simple. We agree with the decision in *Petula Assocs., Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499 (5th Cir. 2001), in which the Court found that the "fair market value must reflect the value of that which can be sold." *Id*. at 503.

Therefore, we conclude that the consideration for the property should be based upon the property as encumbered by the remaining leasehold interest.

## Conclusion

The judgement of the trial court finding the purchase option afforded the Lessee to be valid is affirmed. The judgement of the trial court finding that the value of the real estate should be determined without considering the remaining lease term is reversed. This case is remanded to the trial court for such further proceedings as are consistent with this opinion. Costs of appeal are assessed against Appellees for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, J.